[No. 33408-5-I. Division One. January 17, 1995.]

FIRST UNITED METHODIST CHURCH OF SEATTLE, *Respondent*, v. THE HEARING EXAMINER FOR THE SEATTLE LANDMARKS PRESERVATION BOARD, ET AL, *Appellants*.

*Mark H. Sidran, City Attorney,* and *Robert D. Tobin* and *Laura Wishik, Assistants,* for appellants.

*George M. Hartung,* for respondent.

BAKER, A.C.J. — The City of Seattle (City) appeals a ruling that the Seattle Landmarks Preservation Ordinance (LPO) is unconstitutional as applied to a church building owned by First United Methodist Church of Seattle (First United). We reverse in part, holding that sections of the ordinance which restrict changes to a landmark building cannot be applied to church property as long as such property is being used for religious purposes, but the remainder of the LPO can be constitutionally applied.

First United owns one-half of a city block in downtown Seattle. A church building and a separate chapel/community center are located on the property. The church was built in 1907 and nominated for protection as a landmark in 1984. Nomination is the preliminary step to designating a landmark. Seattle Municipal Code (SMC) 25.12.370. Under the LPO, the nomination requires First United to obtain a certificate of approval from the landmarks board before making any changes to the church. SMC 25.12.670. The board has since recommended controls for changes to the church and recommended that the city council designate the church building as a landmark. First United challenged the nomination, and sought to enjoin the City from designating the church building as a landmark.

The trial court granted summary judgment for First United, holding that the ordinance was unconstitutional as applied to First United, and enjoining the City from any attempt to control First United's actions regarding the church building.

In two recent decisions the Supreme Court found the LPO unconstitutional as applied to a church. *First Covenant Church v. Seattle*, 114 Wn.2d 392, 787 P.2d 1352 (1990), *vacated and remanded*, 499 U.S. 901 (1991) (*First Covenant I*); *First Covenant Church v. Seattle*, 120 Wn.2d 203, 840 P.2d 174 (1992) (*First Covenant II*). In those cases, the church building had gone through the designation process, and a designating ordinance had been enacted. *First Covenant II*, 120 Wn.2d at 208-09. The ordinance contained language exempting from the City's control any changes First Covenant proposed to make which First Covenant believed were necessary for the church's liturgy. *First Covenant II*, 120 Wn.2d at 209.[1]

In *First Covenant I* the Supreme Court found that the LPO could not be constitutionally applied to property owned

---

[1] In *First Covenant I* and II the Supreme Court held the LPO unconstitutional as applied to First Covenant Church because its restrictions interfered with the free exercise of religion.

*First Covenant I* also acknowledged that mere nomination of a building as a landmark imposes restrictions on its owner. *First Covenant I*, 114 Wn.2d at 405-06. In the present case, First United's church has been nominated, and by the terms of the LPO is therefore subject to some of the ordinance's restrictions. To the extent

by religious organizations. *See First Covenant* I, 114 Wn.2d at 409. The United States Supreme Court vacated that decision in a memorandum opinion, and remanded to the Washington Supreme Court for reconsideration in light of *Employment Div., Dep't of Human Resources v. Smith*, 494 U.S. 872, 108 L. Ed. 2d 876, 110 S. Ct. 1595 (1990). *First Covenant* I, 499 U.S. 901 (1991). The rule generated from *Smith* is that a facially neutral law of general application is not made unconstitutional by an incidental consequence of interfering with the free exercise of religion. *First Covenant* II, 120 Wn.2d at 212.

The Washington Supreme Court reexamined *First Covenant* I in light of *Smith*, and reinstated its earlier holding. *First Covenant* II, 120 Wn.2d at 208. The court found that the LPO was not a law of general application, because its criteria for application necessitated individual evaluations of each potential landmark property. *First Covenant* II, 120 Wn.2d at 215. The court further found that the specific designating ordinance, with its liturgy-based exemption, made the LPO non-neutral as applied to First Covenant. *First Covenant* II, 120 Wn.2d at 214. Therefore, the LPO's interference with First Covenant's free exercise of religion violated the First Amendment.[2]

The court also found the liturgy-based exemption too narrow and ambiguous to cure the unconstitutional interference caused by the ordinance. *First Covenant* II, 120 Wn.2d at 220-21. The exception also required entanglement between the City and First Covenant, because First Covenant was still required to gain approval (supposedly automatic) for

---

that a constitutional right is being violated, a party need not exhaust administrative remedies before turning to the courts. *See, e.g.*, RCW 34.05.570. We therefore find that the issue of the LPO's application to First United is ripe for judicial determination.

[2]The United States Supreme Court also noted in *Smith* that a law which interferes with another constitutional right in addition to free exercise may be invalid even if its interference is merely incidental. *Smith*, 494 U.S. at 881. The court found this to be the case in *First Covenant* II. Because the church building is an expression of religious belief, the court found that the landmark designation also interfered with free speech. *First Covenant* II, 120 Wn.2d at 216.

changes necessitated by the church's liturgy. *First Covenant* II, 120 Wn.2d at 221-22. The court found that the exception gave the City the opportunity to evaluate the religious purposes of any changes to the church proposed by First Covenant.[3]

In *First Covenant* II the City urged the application of *Rector, Wardens, & Members of Vestry of St. Bartholomew's Church v. New York*, 914 F.2d 348 (2d Cir. 1990), *cert. denied*, 499 U.S. 905 (1991). In that case, the court found a landmarks law to be neutral and of general applicability. *St. Bartholomew's*, 914 F.2d at 355. New York's landmarks preservation ordinance is similar to Seattle's. *See First Covenant* II, 120 Wn.2d at 240-41 (Dolliver, J., dissenting). The *First Covenant* court distinguished *St. Bartholomew's*, finding that *St. Bartholomew's* involved a church-owned building, but not the church building itself, and the ordinance affecting St. Bartholomew's did not contain a liturgy-based exemption. *First Covenant* II, 120 Wn.2d at 216. Further, the church had not initially challenged the designation of its building as a landmark, and had not alleged diminution in the value of its property caused by the designation. In contrast, the *First Covenant* cases involved a church building. Further, the Church proved a significant reduction in the property's value due to its designation as a landmark, and fought designation from its inception. *First Covenant* II, 120 Wn.2d at 216. The court also found that, unlike St. Bartholomew's, which wanted to demolish its building and construct an office building, First Covenant intended to continue using its church for exclusively religious purposes.[4] *First Covenant* II, 120 Wn.2d at 216.

---

[3]The court also found that the Washington State Constitution gives more absolute protection to religious freedom than the federal constitution. *First Covenant* II, 120 Wn.2d at 224. Under state law, even a neutral law of general application can be found unconstitutional for merely incidental effects on free exercise. *First Covenant* II, 120 Wn.2d at 226. However, because the LPO is not a law of general application, the state constitution does not affect our analysis. The ordinance simply must not interfere with the free exercise of religion.

[4]Although at least partially based on First Covenant's intent to continue use of its property for religious purposes, the effect of a broad reading of *First Covenant* I and II would be to allow the scenario prevented in *St. Bartholomew's*: demolition of the church in favor of a high-rise office building.

 The facts of this case fall somewhere between *First Covenant* I and II and *St. Bartholomew's*. Like First Covenant, First United has fought landmark designation from the onset of the process, and the building involved is a church building. However, the important distinction between these cases for constitutional purposes is the use of the property. If property is not used primarily for religious purposes, restricting the use of that property does not hinder the free exercise of religion.[5] Because First United's church building is used primarily for religious purposes, its use and any proposed changes to the building cannot be restricted by the LPO.

Merely designating property as a landmark, however, does not interfere with the free exercise of religion. It is the placing of restrictions on the property which causes the prohibited interference. We therefore hold that the portions of the LPO which place restrictions, as found in SMC 25.12 subchapters V and VI, cannot be applied to the church building owned by First United as long as the building is being used primarily for religious purposes.

However, our ruling that these provisions cannot presently be applied to the church building does not invalidate the entire LPO. *See* SMC 25.12; Seattle City Ordinance 106348 § 14.09, at 25-96.8 (1977) (severability clause). The City may still choose to designate the church building as a landmark, but the landmarks board cannot restrict modification of the structure in any way unless and until the structure ceases to be used primarily for religious purposes. Thus First United need not seek any approval from the landmarks board before modifying its church building, so long as the building is being used primarily for religious purposes.[6]

---

[5]First United argues that the economic costs of maintaining a landmark building would hinder its free exercise. However, the LPO contains a hardship exemption from restrictions to the use of a landmark that disallow reasonable economic use of the property. SMC 25.12.580.590. Similarly to the court's finding in *St. Bartholomew's*, such hardship inquiry should not excessively entangle the State and religious organization, because "the matters scrutinized [are] exclusively financial and architectural", *St. Bartholomew's*, 914 F.2d at 356 n.4, and under our holding would only occur once the church was no longer used primarily for religious purposes.

[6]Even if First United chooses to demolish the existing church building in order to replace it with a new building to be used primarily for religious purposes, no LPO restrictions can apply.

No landmark controls can apply to the structure either during predesignation (but nominated) status under the LPO or after designation, if such occurs. However, if the structure ceases to be used principally for religious purposes, the LPO restrictions will apply.

The order of the trial court is reversed in part.

GROSSE and WEBSTER, JJ., concur.

After modification, further reconsideration denied March 7, 1995.

Review granted 127 Wn.2d 1004 (1995).