[No. 62805-0. En Banc.]
Argued September 27, 1995. Decided May 9, 1996.

FIRST UNITED METHODIST CHURCH OF SEATTLE, *Petitioner*, v. THE HEARING EXAMINER FOR THE SEATTLE LANDMARKS PRESERVATION BOARD, ET AL., *Respondents*.

---

[25]RCW 9.73.050 provides in part: "Any information obtained in violation of RCW 9.73.030 . . . shall be inadmissible."

*Misterek & Woo, P.S.,* by *George M. Hartung, Jr.* and *Leon C. Misterek,* for petitioner.

*Mark H. Sidran, City Attorney,* and *Robert Tobin, Assistant,* for respondents.

*Angela C. Carmella, Steven McFarland, Lily R. Chiu, David A. Doheny, Elizabeth Merritt,* and *Laura Nelson* amici curiae.

DURHAM, C.J. — Petitioner First United Methodist Church of Seattle (United Methodist) challenges a Court of Appeals ruling that permits Respondent City of Seattle (City) to designate its church a landmark. United Methodist argues that landmark designation violates the right to free exercise of religion under the First Amendment to the United States Constitution and article I of the Washington State Constitution. The Court of Appeals held that mere landmark designation of a church does not infringe on religious freedom, provided that government controls are suspended until the building ceases its religious function. That analysis marks a departure from recent precedent applying a strict scrutiny analysis and holding landmark designation unconstitutional once the complaining party shows a coercive effect on free exercise. Accordingly, we reverse the Court of Appeals and conclude that the Landmarks Preservation Ordinance, Seattle Municipal Code (SMC) 25.12, imposes an unconstitutional burden on United Methodist's right to free exercise of religion.

## FACTS

United Methodist owns a one-half city block in downtown Seattle on Fifth Avenue between Marion Street and Columbia Street. A church is located on the northern part of the property; on the southern part of the property is a separate building containing a chapel and community center. The church was erected in 1909. In December 1984, Seattle's Office of Urban Conservation nominated both the interior and exterior of the church for landmark designa-

tion under the Landmarks Preservation Ordinance, SMC 25.12. The chapel/community center, built in 1950, was not nominated.

Despite fierce opposition from United Methodist, Seattle's Landmarks Preservation Board approved the nomination for landmark designation in February 1985. As a result, United Methodist was prohibited from making any alterations or significant changes to the church without City approval for the course of the designation period. In November 1985, the Landmarks Preservation Board officially recommended that the Seattle City Council enact a designating ordinance with "controls and incentives" preventing United Methodist from making any significant changes or alterations to the interior and exterior of the church without City approval unless "such changes [were] necessitated by changes in the liturgy."

United Methodist appealed to the City hearing examiner, claiming that the church suffered from deterioration and that repairs to the church would be affordable only absent government controls. United Methodist also maintained it needed a smaller sanctuary.

> The design of the sanctuary prevents the Church from adapting to current Church liturgy. . . .
>
> . . . The present sanctuary is too large to foster as dynamic and meaningful worship services as desired. Membership of this Church today is one-half or less than that of only 30 to 40 years ago. The expansion of the commercial core of the city, the construction of the freeways, the construction of vastly expanded medical and commercial facilities on First Hill are some of the changes in Seattle which have contributed to the decline in the Church's membership.

Clerk's Papers at 27. Finally, United Methodist argued that it should be free to designate any portion of its property for commercial use in order to fund religious and social service programs.

During United Methodist's appeal to the hearing examiner, we decided *First Covenant Church v. City of Se-*

*attle*, 114 Wn.2d 392, 787 P.2d 1352 (1990) (*First Covenant I*). *First Covenant* I held that the Landmarks Preservation Ordinance, SMC 25.12, violated First Covenant Church's right to free exercise of religion. In response to *First Covenant* I, United Methodist moved to dismiss the proceedings before the hearing examiner. The hearing examiner denied the motion. United Methodist then filed this suit in superior court seeking a declaratory judgment to stop the landmark designation proceedings.

Subsequently, the United States Supreme Court vacated our decision in *First Covenant* I and remanded for reconsideration in light of *Employment Div., Dep't of Human Resources of Or. v. Smith*, 494 U.S. 872, 110 S. Ct. 1595, 108 L. Ed. 2d 876 (1990).[1] On reconsideration, we reaffirmed our original holding. *First Covenant Church v. City of Seattle*, 120 Wn.2d 203, 840 P.2d 174 (1992) (*First Covenant II*). United Methodist then moved for summary judgment. The trial court granted the motion and enjoined the City from pursuing landmark designation of United Methodist.

The Court of Appeals, reversing in part, held that the City could enact an ordinance designating the church a landmark as long as it refrained from imposing any controls "until the structure ceases to be used for primarily religious purposes."[2] *First United Methodist Church v. Hearing Examiner for the Seattle Landmarks Preservation Board*, 76 Wn. App. 572, 576, 887 P.2d 473 (1995). Responding to United Methodist's assertion that it wanted to raze the church, the Court of Appeals held that United Methodist could demolish the building if it "replace[d] it with a new building to be used primarily for religious purposes." *United Methodist*, 76 Wn. App. at 576 n.6 (footnote 6 added

---

[1]*City of Seattle v. First Covenant Church*, 499 U.S. 901 (1991).

[2]The trial court held that the City could *never* designate United Methodist a landmark. The Court of Appeals held that the City could not impose landmark designation while the church served a primarily religious purpose. Apparently, the Court of Appeals only *partially* reversed the trial court because the City remained enjoined from pursuing landmark designation while United Methodist retained its religious purpose.

by Order Modifying Op. filed Mar. 7, 1995). United Methodist argues that this restriction is unconstitutional and that it has a right to demolish the church and sell the property for commercial development. Several church organizations (referred to herein as the Christian Legal Society) jointly filed an amicus curiae brief in support of United Methodist. The National Trust for Historic Preservation in the United States filed a brief in support of the City of Seattle.

## RIPENESS

We begin with the issue of ripeness. In 1985, the City formally nominated United Methodist for landmark designation pursuant to the Landmarks Preservation Ordinance. Once a building is nominated, the Landmarks Preservation Ordinance provides the means for the City to adopt a separate ordinance officially designating it a landmark. SMC 25.12.650. United Methodist opposed the nomination, and before the City could adopt a designating ordinance, United Methodist brought an action for declaratory judgment. The City, in its brief to the Court of Appeals, claimed that this case is not ripe for review because the City has yet to enact a designating ordinance. We disagree.

Under the Landmarks Preservation Ordinance, nomination alone carries with it severe restrictions. For example, the ordinance prohibits owners of nominated buildings from making "alterations or significant changes to specific features or characteristics of the site" for the duration of the designation proceedings. SMC 25.12.670. For over 10 years, the City has prevented United Methodist from effecting changes to the church, even though United Methodist expressed a need to fully renovate the church's sanctuary in order to adapt it to changes in the liturgy. More recently, United Methodist has argued that repairs essential to the building's maintenance are too expensive; thus, it must sell its property and use the proceeds for purposes of furthering its religious mission. Landmark

nomination, however, has prevented United Methodist from either remodeling its sanctuary or selling the church property.

 A justiciable controversy must exist before this Court will review a declaratory judgment action challenging the constitutionality of an ordinance. Such a controversy exists where there is

> (1) . . . an actual, present and existing dispute, or the mature seeds of one, as distinguished from a possible, dormant, hypothetical, speculative, or moot disagreement, (2) between parties having genuine and opposing interests, (3) which involves interests that must be direct and substantial, rather than potential, theoretical, abstract or academic, and (4) a judicial determination of which will be final and conclusive.

*First Covenant* I, 114 Wn.2d at 398 (quoting *Diversified Indus. Dev. Corp. v. Ripley*, 82 Wn.2d 811, 815, 514 P.2d 137 (1973)). The present case satisfies each of these four elements: landmark nomination hinders United Methodist from selling its property; a dispute exists between the City and United Methodist regarding this nomination; the dispute is not hypothetical; and the Court can reach a conclusive determination on the constitutionality of the Landmark Preservation Ordinance. As we stated in *First Covenant* I, "[d]eciding whether a case presents a cause of action ripe for judicial determination requires an evaluation of 'the fitness of the issues for judicial decision and the hardship to the parties of withholding consideration.' " *First Covenant* I, 114 Wn.2d at 399 (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 149, 87 S. Ct. 1507, 18 L. Ed. 2d 681 (1967)). Since the Landmarks Preservation Ordinance already has placed constraints on United Methodist, we conclude that this case is ripe for review.

## CONSTITUTIONALITY

We turn now to the constitutionality of the Landmarks Preservation Ordinance as it applies to United Methodist. We originally addressed the constitutionality of landmark

designation in *First Covenant Church v. City of Seattle*, 114 Wn.2d 392, 787 P.2d 1352 (1990) (*First Covenant* I). In contrast to the present case, the City in *First Covenant* I adopted an ordinance designating the church a landmark. The designating ordinance required First Covenant to obtain approval from the City before making significant changes or alterations to the church facade. *First Covenant* I, 114 Wn.2d at 405-06. It contained an exemption permitting alterations "necessitated by changes in liturgy." However, this "liturgy exemption" directed First Covenant and the City to discuss "possible alternative design solutions as may be appropriate or necessary to preserve the designated features of the landmark." *First Covenant* I, 114 Wn.2d at 406-07 (quoting Seattle city ordinance 112425 (1985)). First Covenant Church challenged both the Landmarks Preservation Ordinance, SMC 25.12, and the separate designating ordinance, arguing they violated the right to free exercise of religion.

 Since free exercise of religion is a fundamental right, *First Covenant* I applied the strict scrutiny test of *Sherbert v. Verner*, 374 U.S. 398, 83 S. Ct. 1790, 10 L. Ed. 2d 965 (1963). Under this test, the complaining party must first prove the government action has a coercive effect on the practice of religion. Once a coercive effect is established, the burden of proof shifts to the government to show the restrictions serve a compelling state interest and are the least restrictive means for achieving the government objective. If no compelling state interest exists, the restrictions are unconstitutional. *First Covenant* I, 114 Wn.2d at 401-02.

We noted in *First Covenant* I that once the City nominated the church for landmark status, the Landmarks Preservation Ordinance prevented First Covenant from making alterations or significant changes to the building without City approval. "The practical effect of the [ordinance] is to require a religious organization to seek secular approval of matters potentially affecting the Church's practice of its religion." *First Covenant* I, 114

Wn.2d at 406. We then turned to the designating ordinance and concluded that the liturgy exemption did not alleviate the coercive effect of the ordinance because it was "vague and unworkable." *First Covenant* I, 114 Wn.2d at 407. For example, it was unclear if the liturgy exemption would permit First Covenant to build a wider door to accommodate handicapped parishioners. Moreover, the exemption required secular approval for alterations necessitated by changes in the liturgy.

> Regardless of the religious nature of the proposed alteration, the Church must submit plans to the [landmarks preservation] board, a secular body, and negotiate possible alternatives. That requirement creates unjustified governmental interference in religious matters of the Church and thereby creates an infringement on the Church's constitutional right of free exercise.

*First Covenant* I, 114 Wn.2d at 408. In light of these factors, we held that First Covenant had met its burden of proving landmark designation had a coercive effect on the practice of religion. Under the strict scrutiny analysis of *Sherbert*, the burden of proof then shifted to the City to show a compelling government interest in landmark preservation. Finding no such interest,[3] we invalidated the ordinance designating the church a landmark. *First Covenant* I, 114 Wn.2d at 409-10. As a result of *First Covenant* I, landmark designation will be found unconstitutional once a religious institution demonstrates a burden on free exercise.

The United States Supreme Court vacated our decision in *First Covenant* I and remanded for consideration in light of *Employment Div., Dep't of Human Resources of Or. v. Smith*, 494 U.S. 872, 110 S. Ct. 1595, 108 L. Ed. 2d

---

[3]We rejected arguments that landmark preservation embodies a compelling state interest. "Balancing the right of free exercise with the aesthetic and community values associated with landmark preservation, we find that the latter is clearly outweighed by the constitutional protection of free exercise of religion and the public benefits associated with the practice of religious worship within the community." *First Covenant* I, 114 Wn.2d at 409.

876 (1990). *Smith* held that a neutral law of general ap-
plicability does not violate the First Amendment even if it
has the incidental effect of burdening religion.[4] *Smith*, 494
U.S. at 878-79. "We have never held that an individual's
religious beliefs excuse him from compliance with an
otherwise valid law prohibiting conduct that the State is
free to regulate." *Smith*, 494 U.S. at 878-79. Nevertheless,
the Supreme Court acknowledged that a higher level of
scrutiny would apply in "hybrid" situations where a
government regulation burdens both free exercise of
religion and other constitutional rights. *Smith*, 494 U.S.
at 882.

On remand, we found *Smith* not controlling for two
reasons. First, Seattle's landmarks ordinance was not a
neutral law of general applicability because it "invite[d]
individualized assessments of the subject property and the
owner's use of such property" and singled out religious fa-
cilities in its references to "liturgy." *First Covenant
Church v. City of Seattle*, 120 Wn.2d 203, 215, 840 P.2d
174 (1992) (*First Covenant* II). Second, the Landmarks
Preservation Ordinance posed a potential threat to both
the free exercise of religion and free speech because the
church building itself was "an expression of Christian
belief and message." *First Covenant* II, 120 Wn.2d at 217.
Thus, the challenge involved in *First Covenant* I was a
"hybrid" situation requiring a higher level of scrutiny.

Having determined *Smith* inapplicable, we again ap-

---

[4]In *Smith*, two drug rehabilitation counselors in Oregon were fired after
ingesting the illegal drug peyote in a religious ceremony at the Native Ameri-
can Church. The two counselors were then denied unemployment benefits under
an Oregon law that disallowed benefits for employees terminated for work re-
lated misconduct. *Employment Div., Dep't of Human Resources of Or. v. Smith*,
494 U.S. 872, 874, 110 S. Ct. 1595, 108 L. Ed. 2d 876 (1990). The counselors chal-
lenged this law arguing it violated their right to free exercise of religion. The
Supreme Court rejected their claim because it found the Oregon law neutral
and of general applicability. In doing so, the Supreme Court declined to apply
the strict scrutiny analysis of *Sherbert v. Verner*, 374 U.S. 398, 83 S. Ct. 1790, 10
L. Ed. 2d 965 (1963).

plied the strict scrutiny analysis of *Sherbert v. Verner*.[5] We held First Covenant had shown that both the Landmark Preservation Ordinance, SMC 25.12, and the separate designating ordinance had a coercive effect on religion since these ordinances imposed financial and administrative burdens on the practice of religion.

> The ordinances burden free exercise "administratively" because they require that First Covenant seek the approval of a government body before it alters the exterior of its house of worship, whether or not the alteration is for a religious reason. Further, they burden First Covenant financially, because they reduce the value of the church's property by almost half.

*First Covenant* II, 120 Wn.2d at 219 (citations omitted). While not all financial burdens have a coercive effect on the practice of religion, gross financial burdens violate the right to free exercise. *First Covenant* II, 120 Wn.2d at 219. "Designation of First Covenant's church so grossly diminishes the value of the Church's principal asset that it impermissibly burdens First Covenant's right to free exercise of religion." *First Covenant* II, 120 Wn.2d at 220. Moreover, the "liturgical exemption" required First Covenant to negotiate with the City before making changes to the building and thus created an administrative burden. *First Covenant* II, 120 Wn.2d at 222. Since the City had no compelling government interest in landmark preservation,[6] these burdens violated the free exercise clause of the First Amendment to the United States Constitution. Having determined that the landmark preservation violated

---

[5]In 1993, Congress responded to *Smith* by passing the Religious Freedoms Restoration Act (RFRA) which provides that "Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability," unless it "(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C.A. § 2000bb-1(a),(b). RFRA basically codifies the strict scrutiny test of *Sherbert* and, as a result, effectively overrules *Smith*.

[6]In *First Covenant* II, we reaffirmed our original holding finding no compelling state interest in landmark preservation. While preserving aesthetic and historic structures may be of value to the City, "[t]he possible loss of significant

the First Amendment, we conducted an independent analysis under our state constitution. We emphasized that Const. art. I, § 11 provides broader protection to religious freedom and held that landmark designation of the church violated article I. *First Covenant* II, 120 Wn.2d at 223-29.

In the present case, the Court of Appeals simply failed to apply a strict scrutiny analysis. United Methodist must show that landmark designation burdens free exercise. Once United Methodist establishes this burden, the City must prove that it has a compelling interest in landmark preservation. The City, nonetheless, concedes that it has no compelling interest. Thus, United Methodist will succeed on its claim once it demonstrates that landmark designation burdens the exercise of religion. The Court of Appeals, however, did not inquire into whether United Methodist succeeded in showing a burden on free exercise. Instead, it held that the City *could* designate the church a landmark, as long as it refrained from imposing controls "until the structure ceases to be used primarily for religious purposes." *First United Methodist Church v. Hearing Examiner for the Seattle Landmarks Preservation Board*, 76 Wn. App. 572, 576, 887 P.2d 473 (1995). Unfortunately, the phrase "primarily for religious purposes" is wholly amorphous. As the Christian Legal Society so aptly stated:

> The burden will fall to the church to prove that its building is being used primarily for religious purposes, which will be open to interpretation. If the congregation decided that the building should be operated exclusively as a soup kitchen, would that be a cessation of religious purpose? Suppose that the congregation rented the building to community groups each night of the week, so that the total number of hours for such "secular" use exceeded the number of hours spent in worship. Is that a cessation of primary use for religious purpose?
>
> Religious property use is diverse. In addition to worship,

architectural elements is a price we must accept to guarantee the paramount right of religious freedom." *First Covenant* II, 120 Wn.2d at 223.

churches make use of property for a variety of other religious purposes, such as education, day care, the provision of food and shelter, counseling, and retreats. . . .

Br. of amici curiae Christian Legal Society at 11-12.

■ We struck down landmark designation in *First Covenant* II, in part because the "liturgical exemption" required First Covenant to meet with City officials before making substantial changes to its church. *First Covenant* II recognized that this would result in a significant administrative burden. Nonetheless, the Court of Appeals decision in *United Methodist* implicitly requires United Methodist to garner City approval for extensive renovations having a debatable religious purpose. This, of course, will encourage further litigation since United Methodist undoubtedly will challenge a City ruling that prohibits it from renovating its church.

Even more troubling, the Court of Appeals decision would allow landmark restrictions to apply if United Methodist tries to sell its church. This could result in a significant burden on free exercise. As United Methodist stated in its brief to this Court:

> [T]he very survival . . . of First United Methodist Church of Seattle . . . depends on its having the freedom to sell its sanctuary for demolition and commercial redevelopment. The record makes clear, however, that the Church is not claiming a right to maximize revenue for the purpose of commercial gain, but only for the purpose of furthering its Christian mission.

Br. of First United Methodist Church of Seattle In Reply to Amicus Curiae Brief of National Trust for Historic Preservation in the United States at 1. If United Methodist decides to sell its property in order to respond to the needs of its congregation, it has a right to do so without landmark restrictions creating administrative or financial burdens. The free exercise clause prevents government from engaging in landmark preservation when it has a

coercive effect on religion. This protection does not cease if United Methodist sells its property.[7]

United Methodist and the Christian Legal Society raise other issues as well. They argue that our decision in *First Covenant* II held all landmark preservation of churches unconstitutional. Moreover, United Methodist maintains that it is unnecessary for religious institutions to show any hardship resulting from landmark designation. These arguments are without merit. *First Covenant* II used an "as applied" analysis to invalidate landmark designation. It held landmark designation unconstitutional because First Covenant succeeded in showing a burden on free exercise. Furthermore, to hold *all* landmark designation of religious institutions unconstitutional could work a hardship on religious institutions.

> [A]lthough landmark status is restrictive in a certain sense, it is also a privileged status that may enhance a church's ability to carry out its mission and protect itself from encroaching development. Many churches, in fact, do not oppose designation, and even seek out landmark status for its positive effect on the church's ministry.

Russell S. Bonds, Comment, *First Covenant Church v. City of Seattle: The Washington Supreme Court Fortifies the Free Exercise Rights of Religious Landmarks Against Historic Preservation Restrictions*, 27 GA. L. REV. 589, 615 (1993) (footnotes omitted).

■ In the present case, United Methodist has demonstrated that the Landmarks Preservation Ordinance, SMC 25.12, severely burdens free exercise of religion because it impedes United Methodist from selling its property and using the proceeds to advance its religious mission. Thus, the City's attempts to designate United Methodist a landmark violate the First Amendment to the United States Constitution and article I of the Washington State Constitution. We reverse the Court of Appeals and hold

---

[7]Of course, once United Methodist sells its property to a nonreligious entity, these protections terminate.

landmark designation of United Methodist unconstitutional.

SMITH, GUY, JOHNSON, and ALEXANDER, JJ., concur.

DOLLIVER, J. (dissenting) — In determining the timeliness of this case, the majority has failed to clarify where in the landmark-designating process First United Methodist Church of Seattle (First United Methodist) has arrived and thus has focused on a premature constitutional issue. The City of Seattle (City) has not enacted a landmark-designating ordinance for First United Methodist. *See* SMC 25.12.610. The hearing examiner has not recommended nomination of First United Methodist for landmark designation. *See* SMC 25.12.560; SMC 25.12.610. Rather, First United Methodist's status remains unresolved at the hearing examiner stage of the nomination process. Truly, while the parties are discussing whether to nominate First United Methodist as a landmark, the church should submit any modification proposals to the Seattle City Council (Council). SMC 25.12.620. First United Methodist has submitted no proposals. No governmental body has exerted any controls over the church or its operation. Designation may not occur at all.

Where in this scenario of facts has the allegedly unconstitutional application of the Landmarks Preservation Ordinance occurred? A declaratory judgment on the constitutionality of a yet to be enacted landmark-designating ordinance is premature, as is consideration of the potential impact of landmark nomination before the nominee has formulated any proposal subject to controls. I concur with the majority's reversal of the Court of Appeals decision, but I dissent from the majority's ultimate holding that the Landmarks Preservation Ordinance is unconstitutional as applied to Plaintiff First United Methodist. I would dismiss.

Two doctrines compose prematurity in a declaratory judgment action: justiciability and ripeness. *First Cove-*

*nant Church v. City of Seattle*, 114 Wn.2d 392, 398, 787 P.2d 1352 (1990) (*First Covenant* I), *vacated*, 499 U.S. 901 (1991), *reinstated on remand*, 120 Wn.2d 203, 840 P.2d 174 (1992) (*First Covenant* II). The justiciability doctrine prevents a court from issuing an advisory opinion in a declaratory judgment cause. *Walker v. Munro*, 124 Wn.2d 402, 411, 879 P.2d 920 (1994); *see* RCW 7.24.010 et seq. Four mandatory factors produce a justiciable controversy:

> (1) . . . an actual, present and existing dispute, or the mature seeds of one, as distinguished from a possible, dormant, hypothetical, speculative, or moot disagreement, (2) between parties having genuine and opposing interests, (3) which involves interests that must be direct and substantial, rather than potential, theoretical, abstract or academic, and (4) a judicial determination of which will be final and conclusive.

*Diversified Indus. Dev. Corp. v. Ripley*, 82 Wn.2d 811, 815, 514 P.2d 137 (1973).

A more striking example than the present case of an advisory opinion is difficult to envision. No present dispute or interests exist for review — because no final action has occurred or been applied to First United Methodist. The dispute between the parties is merely speculative until formal designation occurs. *See First Covenant* I, 114 Wn.2d at 398. Indeed, by forgoing a final administrative decision, First United Methodist has eschewed the very process designed to protect its interests in designation through mutual development of controls and incentives. *See* SMC 25.12.470; SMC 25.12.490; SMC 25.12.570.

By comparison, where the challenged portions of Initiative 601 were not yet in effect, this court determined any dispute was merely speculative and thus nonjusticiable. *Walker*, 124 Wn.2d at 411. Likewise, a constitutional challenge to the provisions of the Growth Management Act permitting revenue penalties against noncomplying cities was nonjusticiable because no sanctions had yet been imposed. *Snohomish County v. Anderson*, 124 Wn.2d 834, 840, 881 P.2d 240 (1994). The interests here remain equally potential and abstract until the Council enacts controls in

a landmarks ordinance that substantially limits First United Methodist's religious expression. *See First Covenant* I, 114 Wn.2d at 398. Even First United Methodist criticized as advisory the Court of Appeals conclusions regarding the constitutionality of specific potential controls in a landmark-designating ordinance.

As noted by the majority, this case concerns a similar constitutional challenge to the application of landmark designation and controls to a church considered by this court in *First Covenant* I and II.

The *First Covenant* I majority determined the church presented a justiciable controversy in claiming landmark designation, and the restrictions of the designating ordinance substantially limited the church's religious expression by interfering with its ability to alter or sell the property. *First Covenant* I, 114 Wn.2d at 398. In remanding here, the majority has approved the same review of the City's consideration of landmark status for First United Methodist. Yet the majority ignores an insurmountable factual distinction barring review: landmark designation has not come to pass in the present case. While I reiterate the *First Covenant* I majority erroneously proceeded past the threshold issue of prematurity, the present case does not even attain the finality or ripeness of *First Covenant* I. *See First Covenant* I, 114 Wn.2d at 418 (Dolliver, J., dissenting).

Even by weakening the justiciability test to permit First United Methodist's challenge, this case certainly is premature. To determine ripeness, the court will examine " 'the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.' " *First Covenant* I, 114 Wn.2d at 399 (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 149, 87 S. Ct. 1507, 18 L. Ed. 2d 681 (1967); *Standard Alaska Prod. Co. v. Schaible*, 874 F.2d 624, 627 (9th Cir.1989), *cert. denied sub nom. BP Exploration (Alaska), Inc. v. Baily*, 495 U.S. 904 (1990)). Three requirements compose a claim fit for judicial determination: "if the issues raised are primarily legal, do

not require further factual development, and the challenged action is final.' " *First Covenant* I, 114 Wn.2d at 400 (quoting *Standard Alaska*, 874 F.2d at 627).

The majority describes the nomination of the church as final because it imposes certain restrictions. Finality, however, requires the administrative decision maker has reached "a definitive position on the issue that inflicts an actual, concrete injury." *Williamson County Regional Planning Comm'n. v. Hamilton Bank*, 473 U.S. 172, 193, 105 S. Ct. 3108, 87 L. Ed. 2d 126 (1985). In *First Covenant* I, the final action ripening the controversy lies in the normalization of restrictions in a landmark-designating ordinance. *First Covenant* I, 114 Wn.2d at 399. Nomination here is not final, nor has the possibility of nomination produced any actual, concrete injury. Only by imagining a speculative hardship that might conceivably flow from a nonexistent nomination or designation hypothetically containing unspecifiable controls and resulting in a potentially negative decision by the Landmarks Board or the Council can the majority find a constitutional injury here.

The majority points to the hardship of landmark designation as interfering with First United Methodist's religious freedom. Indeed, such is the holding of *First Covenant* I and II regarding that church's designating ordinance. *First Covenant* II, 120 Wn.2d at 219; *First Covenant* I, 114 Wn.2d at 409-10. But no designating ordinance exists in the present case. Again, the majority has speculated on the impacts a designating ordinance might wreak. Each landmark-designating ordinance is unique, developed case by case to protect the needs of the individual landmark. Whether the controls of a nonexistent ordinance might interfere with this church is impossible to determine.

Certainly no factual development has ensued to decide the particular hardship asserted by First United Methodist—that landmark controls would prevent sale or demolition of the property. Even were controls currently in place

for review, the church has not submitted any proposal by which to determine the impact of those controls. Even if the church made a proposal and even if the designating ordinance specifically restricted that proposal, the Council has authority to grant an exemption for the proposed activity. SMC 25.12.680; SMC 25.12.810.

By permitting this case to go forward, the majority has greatly and unjustifiably expanded the principles of religious freedom that First United Methodist Church of Seattle claims threatened. *First Covenant* I and II prevent a city from imposing specific landmark controls on a place of worship upon a showing of a burden on religion. The present decision prevents a city from even discussing nomination of a place of worship, much less nominating, designating, or enacting controls over a church. While the First Amendment prohibits governmental interference in religion, the majority sanctions religion's isolation from its community.

TALMADGE, J., and PEKELIS, J. Pro Tem., concur with DOLLIVER, J.

MADSEN, J., concurs in the result.