IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 33886-0-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TRACEY EDWARD LYON, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, J. — Tracey Lyon appeals his conviction for first degree child

molestation, arguing that his right to a jury trial was violated when the State's child

forensic interviewer bolstered the victim's credibility and commented on Mr. Lyon's

guilt, his right to a fair trial was violated by prosecutorial misconduct during closing

argument, and two community custody conditions imposed are not crime related and

should be stricken. We affirm the conviction but direct the trial court to strike a non-

crime-related community custody condition prohibiting Mr. Lyon from accessing social media.

FACTS AND PROCEDURAL BACKGROUND

Sometime in February or March 2013, when Michelle K.[1] was eight years old and visiting her grandmother, she went into the room of her grandmother's boyfriend, Tracey Lyon, to listen to music on his laptop. Mr. Lyon was lying on the bed, his laptop on his lap, and she sat down on the bed with her back against the pillows. At one point, when she reached over to get her orange juice, she felt Mr. Lyon put his hand in her pants and touch her vagina with his finger. According to Michelle, the touching lasted "maybe five seconds." Report of Proceedings (RP) at 343. She believed Mr. Lyon stopped upon hearing her grandmother's footsteps because he moved his hand just as her grandmother came into the room.

Michelle followed her grandmother into her grandmother's room and told her what had happened, but her grandmother did not believe her. Michelle heard her grandmother then ask Mr. Lyon if he had touched her, and he said no.

About a year later, after Michelle's father noticed changes in her behavior and told her she should tell someone if anyone had touched her, Michelle wrote her father a note, disclosing that "[t]he person who touched me is Tracey Lyon." RP at 348. Her father

---

[1] We use a pseudonym for the child victim.

2

reported what he learned to law enforcement, and Michelle was interviewed by a child forensic interviewer, Lisamarie Larrabee, to whom she reported the conduct described above.

Kittitas police officer Chris Taylor interviewed Mr. Lyon, who recalled being awakened on the evening in question by Michelle's grandmother, who asked him what had happened with her granddaughter. According to Mr. Lyon, he had earlier been sitting on his bed watching Netflix on his laptop, Michelle was sitting next to him with her head on Mr. Lyon's shoulder, and he fell asleep. Mr. Lyon told Officer Taylor that he had not touched Michelle at all. Officer Taylor asked if Michelle had brought a drink into the bedroom and Mr. Lyon recalled that she had, and said he believed she reached for it at some point.

The State charged Mr. Lyon with first degree child molestation. Before trial, the court determined that Michelle—age 10, by the time of trial—was competent to testify, and that Ms. Larrabee's initial forensic interview, which had been recorded, was admissible.

The State called Ms. Larrabee to testify, played the forensic interview for the jury, and then questioned Ms. Larrabee about her approach to eliminating alternative explanations for a child's report of molestation:

> Q.    . . . [W]hat is an alternative hypothesis?
> A.    That is where—it—it's basically an alternative explanation for what is thought to have happened to the child going into the interview. If

the child has made a disclosure you—you're—you know, you attempt to keep your mind open that it could be some other explanation than—that abuse.

. . . .

Q.    And did you check in this case for alternative hypothesis or motives to make a false statement?

A.    Yes.  So, you know, an example of an alternative hypothesis might be that it was [a] misconstrued innocent touch, or that it's something the child observed or heard, that it didn't actually happen to them, perhaps it—if someone—some other perpetrator that the child is trying to protect actually was the one that did it and—or that a child is lying to retaliate or seek attention, something like that.

So in this particular case, since the child had very early on clearly stated that her—her gent—her genitals had been touched directly by a particular person, you know, given the—the nature of the relationship between those two people and her age I eliminated the possibility that it was an innocent—

Q.    Okay.

A.    —misconstrued touch.  So, I think, at that point what I—what I was kind of trying to focus on more was a possible motive for—for lying and I—and I did ask questions in an effort to try and explore that.

Q.    Okay.  And just for a moment, let's do an alternative hypothesis. You did ask questions of this child about whether the hand was over the clothing or under the clothing, is that correct?

A.    Yes.  I didn't give both those—of those options.  I said was it on top of the clothing or something else I believe.

Q.    Okay.  And so if, in fact, we'll say alternatively or hypothetically, a child had said oh, it was on top—

A.    Mmm hmm. [Affirmative].

Q.    —of the clothing.

A.    Mmm hmm. [Affirmative].

Q.    And there was evidence the two were together, perhaps an alternative hypothesis could be that, you know, the adult could have pushed the child away and accidentally touched?

A.    Yes.

Q.    That private area?

A.    Yeah.  Or were wrestling or, you know, playing tag.

Q.    Wrestling?

A.      Who knows?  There might have been—yeah, there, there could be other things.  So I'd gather more details about it.

RP at 541-44 (some alterations in original).

At that point in the testimony, Mr. Lyon's lawyer objected, telling the court that establishing whether alternative theories had been eliminated was "[for] the jury to determine.  I mean, her interview speaks for itself.  She asked the questions she asked, the child said what she did.  Ms. Larrabee determining things from it I—I think is taking the province of the jury."  RP at 544.  The State responded that it was "almost done," adding, "I have not heard anything from this witness saying well, I was personally satisfied that this happened, as opposed to well, this is how I attempted to do that."  RP at 544-45.

The trial court overruled the defense objection, but with the proviso that "I think that counsel's right, . . . the video speaks for itself and I think you've established what you need to establish with this witness so far . . . and I don't think it needs to go any further."  RP at 545.  Thereafter, the prosecutor asked, in wrapping up his questioning:

Q.      In general, then, Ms. Larrabee, through the course of your interview
         . . . did you, in questioning, keeping an open mind, attempt to
         explore whether this child was engaging in—whether there was an
         alternative explanation or whether she was providing a false
         statement?  Did you do that as an interviewer?
A.      Yes, I did.
Q.      Okay.  And last, as a trained and experienced child forensic
         interviewer, in looking at your interviews, how would you compare
         this interview to . . . four hundred and forty others you conducted?
A.      I'd say that it was technically sound.  The child was forthcoming.
         She seemed like she wanted to provide accurate information.  I think
         it was a little long, longer than most.

5

RP at 545-46. Defense counsel did not object.

During closing argument, the prosecutor made statements that Mr. Lyon now contends ridiculed his position on the sole disputed issue in the case: whether, while alongside Michelle on the bed, Mr. Lyon touched her. Defense counsel did not object to the argument.

The jury found Mr. Lyon guilty. Among the community custody conditions imposed at sentencing were that Mr. Lyon not view or use sexually explicit material and not access social media sites. Mr. Lyon appeals.

## ANALYSIS

### *Opinion testimony on credibility and guilt*

Mr. Lyon first assigns error to the trial court's overruling his objection to Ms. Larrabee's testimony about eliminating alternative explanations for reported molestation, which he argues bolstered Michelle's credibility and conveyed Ms. Larrabee's belief in Mr. Lyon's guilt. We review a trial court's decisions to admit expert testimony for an abuse of discretion. *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 691, 101 P.3d 1 (2004). "A trial court abuses its discretion when its decision is manifestly unreasonable or exercised on untenable grounds or for untenable reasons, i.e., if the court relies on unsupported facts, takes a view that no reasonable person would take, applies the wrong

6

legal standard, or bases its ruling on an erroneous view of the law." *State v. Hudson*, 150 Wn. App. 646, 652, 208 P.3d 1236 (2009).

"Cases involving alleged sex abuse make the child's credibility 'an inevitable, central issue.'" *State v. Kirkman*, 159 Wn.2d 918, 933, 155 P.3d 125 (2007) (*Kirkman* II) (quoting State v. Petrich, 101 Wn.2d 566, 575, 683 P.2d 173 (1984)). Obvious opinions on credibility are barred by ER 608 (a point beyond debate) but the rule has also been held to bar implied opinions on credibility. 5A KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE § 608.16 at 458 (6th ed. 2016). A number of Washington decisions have addressed whether testimony of medical or law enforcement professionals about their communication with an alleged child victim of molestation implies opinions about the child's credibility, requiring reversal.

Cases involving opinions on credibility tend to overlap with cases involving opinions on guilt. *Id.* A witness may not offer an opinion as to the defendant's guilt, either by direct statement or by inference. *State v. Montgomery*, 163 Wn.2d 577, 591, 183 P.3d 267 (2008) (citing *State v. Demery*, 144 Wn.2d 753, 759, 30 P.3d 1278 (2001) (plurality opinion)). Such an opinion violates the defendant's inviolate constitutional right to a jury trial, which vests in the jury "the ultimate power to weigh the evidence and determine the facts." *James v. Robeck*, 79 Wn.2d 864, 869, 490 P.2d 878 (1971).

In *Kirkman* II, the Washington Supreme Court reversed two decisions of this court that had set aside child molestation convictions because someone who interviewed the

7

child was held to have indirectly expressed an opinion bolstering the child's credibility.

*Kirkman* II clarified that neither a child interviewer's testimony about protocol followed

in an effort to get accurate information, nor his or her description of the child's demeanor

as a demeanor to be expected, improperly supports the child's credibility or implies an

opinion as to the defendant's guilt. In the case of defendant Kirkman, this court had held

that a physician who testified that a child gave a very clear and consistent history, with

lots of detail and appropriate affect, "'was *clearly* commenting on [the child's]

credibility.'" *Kirkman* II, 159 Wn.2d at 930 (quoting *State v. Kirkman*, 126 Wn. App.

97, 104, 107 P.3d 133 (2005) (*Kirkman* I)). The Supreme Court disagreed, stating that

the physician

> was not "clearly" commenting on A.D.'s credibility and actually testified
> that his findings neither corroborated nor undercut A.D.'s account. Dr.
> Stirling did not come close to testifying that Kirkman was guilty or that he
> believed A.D.'s account. Dr. Stirling's statement that A.D.'s account was
> "clear and consistent" does not constitute an opinion on her credibility. A
> witness or victim may "clearly and consistently" provide an account that is
> false.

*Id.*

The Supreme Court in *Kirkman* II also rejected this court's conclusion that a

detective who testified to a competency protocol he followed to satisfy himself that a

child he was interviewing was able to distinguish between the truth and a lie and

promised to tell the truth, "'[i]n essence' told the jury that [the child] told him the truth in

providing her account of events." *Id.* at 930-31 (first alteration in original) (quoting

8

*Kirkman* I, 126 Wn. App. at 105). Instead, the Supreme Court observed, "By testifying to this interview protocol, [the detective] 'merely provided the necessary context that enabled the jury to assess the reasonableness of the . . . responses,'" adding that "[d]etectives often use a similar protocol in all child witness interviews, whether they believe the child or not." *Id.* at 931 (quoting *Demery*, 144 Wn.2d at 764).

The testimony of Ms. Larrabee complained of by Mr. Lyon falls within the same categories as the testimony held to be proper in *Kirkman* II. Ms. Larrabee explained her protocol. From that, the jury—having viewed a videotape of her interview of Michelle—could accept or reject whether the protocol would enhance reliability and whether it was used effectively with Michelle. Ms. Larrabee's testimony that Michelle was "forthcoming" during the interview was no more a comment on her credibility than was the physician's testimony in *Kirkman* II that the child in that case was clear and consistent, with appropriate affect.[2] No error is shown.

---

[2] Additionally, and to the extent that Mr. Lyon did not object to all of the testimony he challenges on appeal, the Supreme Court held in *Kirkman* II that to constitute manifest constitutional error reviewable for the first time on appeal under RAP 2.5(a)(3), there must be "a nearly explicit statement by the witness that the witness believed the accusing victim." 159 Wn.2d at 936. Ms. Larrabee made no such statement here.

*Prosecutorial misconduct*

Mr. Lyon next argues that portions of the prosecutor's closing argument ridiculed Mr. Lyon and asked the jury to speculate as to why the alleged touching occurred.

To prevail on a claim of prosecutorial misconduct, the defendant must show that the prosecutor's comments were improper and that the improper comments prejudiced the defendant. *State v. Lindsay*, 180 Wn.2d 423, 430, 326 P.3d 125 (2014). And if a defendant does not object to the alleged misconduct at trial, reversal is appropriate only if the misconduct is so "flagrant and ill intentioned" that no curative instruction could have removed the prejudice caused by the misconduct. *State v. Emery*, 174 Wn.2d 741, 761-62, 278 P.3d 653 (2012). Mr. Lyon made no objection in the trial court to the argument he challenges on appeal, so he must make the heightened showing of flagrant and ill intentioned misconduct.

In the context of closing argument, the prosecutor has wide latitude and is allowed to draw reasonable inferences from the evidence. *State v. Fisher*, 165 Wn.2d 727, 747, 202 P.3d 937 (2009). We review the "alleged improper remarks in the context of the total argument, the issues in the case, the evidence addressed in the argument, and the instructions given to the jury." *State v. Anderson*, 153 Wn. App. 417, 430, 220 P.3d 1273 (2009).

The first statement in closing argument challenged by Mr. Lyon is the prosecutor's discussion of instruction 9, defining "sexual contact." The prosecutor stated:

> Instruction 9 - sexual contact, any touching of the sexual or intimate parts of a person done for the purpose of gratifying that person's sexual desire. Any touching. I only point that out because perhaps somebody's thinking, you know, I mean, is that it? Are we just talking oops! Yes, that's it. That's all we're talking about.

RP at 620. In opening statement, the defense had emphasized the fact that Michelle accused Mr. Lyon of touching her only once, and for only five seconds. The prosecutor presumably, legitimately, wanted to drive home to jurors that once, for five seconds, was all the State was required to prove. To the extent the statement could be understood to mean that an *accidental* touching was enough, it misstated the law. But we do not believe that implication was intentional, and any prejudice could easily have been cured with instruction.

The other statements in closing challenged by Mr. Lyon are the following:

> So the fact when you think about why would anybody do this? I mean, why? Give me a break. You've got to be kidding me. There's got to be some psychoanalytical reason, something, OCD, something there. I submit to you as you make the decision based on the facts in evidence, who knows? Who really cares?
> Who knows why anybody does anything? Sometimes we do. And who really cares in the aftermath? We take an extreme case of an individual who just, for whatever reason, or for whatever moment, takes out a gun and fires it into somebody they don't know. It is what it is. That's it. Well, it's a matter of fact. What's the big deal?

RP at 642. The State suggests that the prosecutor was trying here to "draw[ ] a contrast between what the law demands and the questions [some jurors] . . . might have about the incentive to commit such a crime." Br. of Resp't at 9. We frankly do not know what

11

point the prosecutor was trying to make. Here again, however, we find no flagrant or ill intentioned conduct. If the defense believed the State was downplaying its burden of proving a sexual gratification purpose beyond a reasonable doubt, prejudice could easily have been addressed by a curative instruction.

No reversible error occurred.

*Community custody conditions*

Finally, Mr. Lyon challenges the imposition of the following community custody conditions imposed by his sentence as "crime related prohibitions":

4)    Not view or use sexually explicit material such as X-rated movies, images, books or audio.

. . . .

10)    Not access social media sites, not limited to Facebook, Twitter, etc.

Clerk's Papers at 183. He argues that because there is no evidence he had viewed sexually explicit materials or contacted minors on social media, the prohibitions are not in fact crime related, and should be stricken. The State concedes that condition number 10 should be stricken but contends that condition number 4 is sufficiently related to Mr. Lyon's crime of conviction and should remain in effect.

As a threshold matter, because Mr. Lyon has not yet been charged with violating the challenged community custody condition, we must determine whether the challenge is ripe for review. *See State v. Valencia*, 169 Wn.2d 782, 786, 239 P.3d 1059 (2010). Pre-enforcement challenges to community custody conditions are ripe for review "'if the

12

issues raised are primarily legal, do not require further factual development, and the challenged action is final.'" *State v. Bahl*, 164 Wn.2d 739, 751 193 P.3d 678 (2008) (quoting *First United Methodist Church v. Hr'g Exam'r for Seattle Landmarks Pres. Bd.*, 129 Wn.2d 238, 255-56, 916 P.2d 374 (1996)). In addition, the court must consider "'the hardship to the parties of withholding court consideration.'" *Id.* (quoting *First United*, 129 Wn.2d at 255).

Here, the issue is ripe for review. The question raised—whether the condition is crime related—is an issue of law. It does not require further factual development; its validity does not depend on the particular circumstances of future attempted enforcement. *See Valencia*, 169 Wn.2d at 788-89. The challenged action is final. *See id.* at 789.

Withholding consideration creates hardship for Mr. Lyon, who will either have to alter his behavior to avoid a penalty under a potentially illegal prohibition, or will have to expose himself to arrest or prosecution in order to challenge it. *See Bahl*, 164 Wn.2d at 747.

The Sentencing Reform Act of 1981, chapter 9.94A RCW, empowers trial courts to impose "crime-related prohibitions" during the course of community custody. RCW 9.94A.505(9). "Crime-related prohibitions" are orders directly related to "the circumstances of the crime for which the offender has been convicted." RCW 9.94A.030(10). "The philosophy underlying the 'crime-related' provision is that '[p]ersons may be punished for their crimes and they may be prohibited from doing

13

things which are directly related to their crimes, but they may not be coerced into doing things which are believed will rehabilitate them.'" *State v. Riley*, 121 Wn.2d 22, 36-37, 846 P.2d 1365 (1993) (alteration in original) (quoting DAVID BOERNER, SENTENCING IN WASHINGTON § 4.5, at 4-7 (1985)). A court's imposition of crime-related prohibitions is reviewed for an abuse of discretion. *Id.* at 37.

We accept the State's concession that condition number 10 is not crime related, so the only condition at issue is the prohibition of using or viewing sexually explicit material. While the record does not suggest that using or viewing such materials served as a catalyst for Mr. Lyon's crime, a condition restricting access to sexually explicit materials is sufficiently crime related because he was convicted of a sex offense. *See State v. Magana*, 197 Wn. App. 189, 201, 389 P.3d 654 (2016). The trial court is directed to strike condition number 10 but not condition number 4.

## STATEMENT OF ADDITIONAL GROUNDS

In a pro se statement of additional grounds (SAG), Mr. Lyon raises two. Both allege ineffective assistance of counsel.

To establish ineffective assistance of counsel, a defendant must prove both deficient performance and prejudice that likely affected the outcome of the trial. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). Failure to satisfy either element results in an unsuccessful claim. *Strickland v. Washington*, 466 U.S. 668, 697,

14

104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). An ineffective assistance of counsel analysis begins with the strong presumption that counsel was effective. *Id.* at 689.

*Advising Mr. Lyon against testifying.* Mr. Lyon represents that his trial lawyer provided ineffective assistance of counsel "by not letting me testify to my innocence." SAG at 1.

Criminal defense counsel's advice that a client not testify is ordinarily legitimate trial strategy and therefore not a basis for a claim of ineffective assistance. If this is the rare case in which it would not have been legitimate trial strategy, then that must be demonstrated by matters outside the record. Challenges that depend on matters outside the record must be raised in a personal restraint petition. *McFarland*, 127 Wn.2d at 335.

*Not objecting to closing argument.* Mr. Lyon argues that his trial counsel was ineffective for not objecting to the prosecutor's statements during closing argument that he challenges on appeal.

Mr. Lyon has not shown that he was prejudiced by his lawyer's failure to object. The closing argument he complains of was not a particularly persuasive part of the state's closing. It would almost certainly have been discounted or ignored by jurors, who would have paid closer heed to the correct jury instruction given by the court. We presume juries follow the trial court's instructions. *State v. Hanna*, 123 Wn.2d 704, 711, 871 P.2d 135 (1994).

15

No. 33886-0-III
*State v. Lyon*

We affirm Mr. Lyon's conviction and remand with directions to the trial court to strike community custody condition number 10.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Siddoway, J.

WE CONCUR:

Korsmo, J.

Fearing, C.J.

16