[No. 63837-3. En Banc.]
Argued September 25, 1996.     Decided January 30, 1997.

FRANK MUNNS, ET AL., *Appellants*, v. ROBERT C. MARTIN, ET AL., *Respondents*.

*Michael E. de Grasse,* for appellants.

*Timothy J. Donaldson;* and *Turner, Stoeve & Gagliardi,* by *Michael C. Geraghty,* for respondents.

*Lawrence C. Watters* on behalf of National Trust for Historic Preservation, amicus curiae.

TALMADGE, J. — We are confronted yet again with the question of whether a local land use ordinance designed to further historic preservation and aesthetic purposes violates our State's free exercise of religion clause, WASH. CONST. art. I, § 11 (amend. 34) when applied to a structure that is part of a church's religious ministry.

Walla Walla's demolition permit ordinance provides a "cooling off period" during which the religious organization is subject to negotiation with governmental and private authorities before an historic or architecturally significant structure can be demolished. The ordinance is an administrative burden on the religious ministry of the Roman Catholic Church and the ordinance involved no compelling state interest. We hold the Walla Walla ordinance is unconstitutional under article I, section 11 as applied.

## ISSUES

1.   Does article I, section 11 apply to a church building

that is not a "house of worship" but is used for religious purposes?

2. Does the Walla Walla ordinance constitute an administrative or financial burden on the free exercise of religion by the Roman Catholic Church?

## FACTS

The Catholic Bishop of Spokane (the Bishop) wishes to demolish St. Patrick's School in Walla Walla and replace it with a new pastoral center.[1] Built in 1928, the building was used primarily as a school until 1974. Since then, the parish has used it for various purposes, including educational, social, and community. The new pastoral center will be "used for religious education, outreach programs, parish social activities related to church celebrations and Sacraments, parish retreat programs such as marriage encounter, renewal, *cursillos* [Spanish for "little course," a short course of study, specifically of intensive religious studies and exercises], and activities of other Catholic organizations." Clerk's Papers at 108-09. There is no dispute that the proposed functions of the pastoral center will be in furtherance of the church mission.

Local opposition to the proposal developed. The individual members of the St. Patrick Parishioners and Friends of Historic Preservation are the petitioners/appellants in this case. Of the seven members of this group, six are members of St. Patrick Parish and one is not. Munns is the former parishioner, but is a graduate of St. Patrick School. "The Petitioners seek to prevent the demolition of the 1928 building in furtherance of their desire to preserve and to renovate the 1928 building." Clerk's Papers at 4, 44. They contend the building is the only example of Ro-

---

[1]The Bishop owns the property, part of St. Patrick's Roman Catholic Church, as a corporation sole. RCW 24.12.010 provides, in pertinent part: "Any person, being the bishop . . . of any church . . . may, in conformity with the constitution, canons, rules, regulations or discipline of such church or denomination, become a corporation sole . . . with all the rights and powers prescribed in the case of corporations aggregate."

manesque revival architecture in Walla Walla, and was built to complement the Gothic architecture of the St. Patrick Church built in 1881. Through the appellants' efforts, and against the objections of the Bishop, the Washington Advisory Council on Historic Preservation in early 1995 listed the building on the Washington State Register of Historic Places, after the Bishop had applied for the demolition permit. The building is not on the National Register of Historic Places because of the Bishop's objection.

On July 25, 1994, the Bishop, through the St. Patrick Parish Building Committee, applied to the City of Walla Walla for a demolition permit. By letter of July 26, Respondent Robert C. Martin, the City's Development Services Manager, sought comments from individuals who might have concerns about the historic and architectural significance of St. Patrick's School pursuant to the Walla Walla Municipal Code, which contains a chapter on conversion of historic structures. Based on the comments the City received during the 10-day holding period (numerous letters protesting demolition), on August 15, 1994, Martin declared a 60-day stay in the issuance of the demolition permit to allow for a hearing before the Planning Commission.

Subsequently, after consultation with the Walla Walla City Attorney, Martin sent a letter on September 13 to the Bishop's local attorney rescinding the stay, and informing the Bishop he intended to issue a Determination of Non-significance (DNS) on September 19, 1994. Martin gave as the reason for rescinding the stay the holding in *First Covenant Church v. City of Seattle*, 120 Wn.2d 203, 223, 840 P.2d 174 (1992), in which this Court held a city's interest in preservation of aesthetic and historic structures was not compelling, and therefore an historic preservation ordinance violated the First Amendment. The letter also cited article I, section 11 of the state constitution as authority.

On September 29, 1994, the appellants filed a petition

for a Writ of Mandamus in Walla Walla County Superior Court, asking the court to issue a writ requiring Martin and the City of Walla Walla to impose the 60-day stay pursuant to WWMC 20.146.040(B)(1), to hold a hearing on the demolition permit application before the Planning Commission, and to receive comment pursuant to WAC 197-11-330(3)(e)(i), a State Environmental Policy Act rule (SEPA) dealing with the threshold determination process.[2] On October 10, 1994, the trial court entered an agreed Order Prohibiting Demolition Permit. The order stayed the issuance of the demolition permit pending further court order.

Up to this point, the Bishop had not been a party to the proceedings. On November 1, 1994, the trial court issued an order permitting the Bishop to intervene and to file an answer to the petition for the writ. The Bishop filed a response on March 24, 1995, alleging as an affirmative defense the City's constitutional inability to prevent the demolition, and praying for dismissal of the writ petition and vacation of the order prohibiting the issuance of the demolition permit.

The parties filed Stipulated Facts and the court heard the case on December 11, 1995. Thereafter, the court issued a Memorandum Decision on February, 22, 1996, and subsequently entered Findings of Fact, Conclusions of Law & Order of Dismissal on March 11. The trial court concluded the administrative restrictions — the municipal ordinance requiring at most a 14-month delay, and the SEPA rule requiring consideration of the impact of the loss of historic and cultural areas — were a burden on the free exercise of religion, and thus in violation of both the state and federal constitutions. The court ordered dismissal of the petition for the writ of mandamus. The court also set aside its previous order prohibiting issuance of

---

[2]Although RCW 43.21C.075(6)(c), the so-called SEPA linkage provision, requires parties appealing SEPA-related decisions to do so only upon the final governmental action with respect to a project, no one has raised the issue of the jurisdiction of the Walla Walla County Superior Court to entertain the petition for a writ of mandamus. We do not reach this issue.

the demolition permit. The appellants appealed directly to this Court and we granted review. RAP 4.2(a).

## ANALYSIS

## ██ A.   THE FREE EXERCISE OF RELIGION IN WASHINGTON[3]

██ ██ Our decisions in *First Covenant Church v. City of Seattle*, 114 Wn.2d 392, 787 P.2d 1352 (1990), *rev'd*, 499 U.S. 901, 111 S. Ct. 1097, 113 L. Ed. 2d 208 (1991) (*First Covenant I*); *First Covenant Church v. City of Seattle*, 120 Wn.2d 203, 215, 840 P.2d 174 (1992) (*First Covenant II*); and *First United Methodist Church v. Hearing Examiner*, 129 Wn.2d 238, 916 P.2d 374 (1996), largely govern the analysis of article I, section 11 and the free exercise of religion. This Court applies a strict scrutiny test to the analysis of religious exercise cases:

> Since free exercise of religion is a fundamental right, *First Covenant* I applied the strict scrutiny test of *Sherbert v. Ver-ner*, 374 U.S. 398, 83 S. Ct. 1790, 10 L. Ed. 2d 965 (1963). Under this test, the complaining party must first prove the government action has a coercive effect on the practice of religion. Once a coercive effect is established, the burden of proof shifts to the government to show the restrictions serve a compelling state interest and are the least restrictive means for achieving the government objective. If no compelling state interest exists, the restrictions are unconstitutional.

*First United Methodist*, 129 Wn.2d at 246.

██ The first prerequisite for any free exercise challenge is that the parties have a sincere religious belief. "To qualify for First Amendment protection individuals must prove only that their religious convictions are sincere and central to their beliefs. The court will not inquire further into the truth or reasonableness of the individual's convictions." *Backlund v. Board of Comm'rs*, 106 Wn.2d

---

[3]Although the Bishop argues both from the First Amendment and the Washington Constitution, we will analyze this case first under our CONST. art. I, § 11. *State v. Hendrickson*, 129 Wn.2d 61, 69, 917 P.2d 563 (1996).

632, 639, 724 P.2d 981 (1986), *appeal dismissed*, 481 U.S. 1034, 107 S. Ct. 1968, 95 L. Ed. 2d 809 (1987). No party has raised any question of the sincerity or centrality of the beliefs of the Roman Catholic Church or the Bishop of Spokane.

The second question for analysis is whether the challenged enactment or action constitutes a burden on the free exercise of religion. The Court's prior holdings in *First Covenant* I, *First Covenant* II, and *First United Methodist* are dispositive as to whether an action or enactment is a burden on religious exercise. As we noted in *First Covenant* II:

> Article 1, section 11 of the state constitution absolutely protects "freedom of conscience in all matters of religious sentiment, belief, and worship" and guarantees that "no one shall be molested or disturbed in person or property on account of religion." This constitutional guaranty of free exercise is "of vital importance." *Bolling* [*v. Superior Court*], 16 Wn.2d [373] at 381 [(1943)]. If the "coercive effect of [an] enactment" operates against a party "in the practice of his religion", it unduly burdens the free exercise of religion. *Witters v. Comm'n for the Blind*, 112 Wn.2d 363, 371, 771 P.2d 1119, *cert. denied*, 493 U.S. 850 (1989); [*City of*] *Sumner* [*v. First Baptist Church*], 97 Wn.2d [1] at 5 [(1982)]. A facially neutral, even-handedly enforced statute that does not directly burden free exercise may, nonetheless, violate article 1, section 11, if it indirectly burdens the exercise of religion. *Sumner*, at 7-8; *Bolling*, at 385-86.

*First Covenant* II, 120 Wn.2d at 226 (some alterations in original).

Finally, if an enactment does create a burden, the courts must analyze if the burden is offset by a compelling state interest. We have not as yet identified every governmental "compelling interest," but we indicated in *First Covenant* II that compelling interests are based in the necessities of national or community life such as clear threats to public health, peace, and welfare. We also noted the State must use the least restrictive possible means to achieve its compelling interest. *First Covenant* II at 226-27. We held

historic landmark preservation was not a compelling state interest:

> If government action burdens the exercise of religion, but the State demonstrates that it has a compelling interest in enforcing its enactment, that interest will justify the infringement of First Amendment rights. *Sherbert*, at 406-07. The State, through its police power, may regulate the use of land. *Penn Cent. Transp. Co. v. New York City*, 438 U.S. 104, 125, 57 L. Ed. 2d 631, 98 S. Ct. 2646 (1978). Landmark preservation laws enacted pursuant to legislative authority regulate land use by conserving structures with historic or aesthetic significance that enhance the quality of life of all citizens. *Penn Cent. Transp. Co. v. New York City, supra* at 108; [Angela C.] Carmella, [*Houses of Worship and Religious Liberty: Constitutional Limits to Landmark Preservation and Architectural Review*, 36 Vɪʟʟ. L. Rᴇv. 401,] at 428-30 [(1991)]. Preservation ordinances further cultural and aesthetic interests, but they do not protect public health or safety. *Society of Jesus* [*v. Boston Landmarks Comm'n*], 409 Mass. [38] at 43-44 [(1990)]; *Church of St. Paul & St. Andrew v. Barwick*, 67 N.Y.2d 510, 539, 496 N.E.2d 183, 202 (Meyer, J., dissenting), *cert. denied*, 479 U.S. 985 (1986). We hold that the City's interest in preservation of aesthetic and historic structures is not compelling and it does not justify the infringement of First Covenant's right to freely exercise religion. The possible loss of significant architectural elements is a price we must accept to guarantee the paramount right of religious freedom.

*First Covenant* II, 120 Wn.2d at 222-23. *See In re Marriage of Jensen-Branch*, 78 Wn. App. 482, 899 P.2d 803 (1995) (Parenting Act treatment of religious upbringing of children upheld); *State v. Clifford,* 57 Wn. App. 127, 787 P.2d 571 (1990) (driver's license requirement a compelling state interest as against claimed religious belief that the licensing requirement puts state on same level as God); *Backlund v. Board of Comm'rs*, 106 Wn.2d 632, 724 P.2d 981 (1986) (hospital has compelling interest in requiring staff physician to purchase professional liability insurance contrary to physician's beliefs); *City of Sumner v. First Baptist Church*, 97 Wn.2d 1, 639 P.2d 1358 (1982) (application of local zoning and building codes to private, church-operated school generally upheld); *State v. Meacham*, 93 Wn.2d 735, 612 P.2d 795 (1980) (provision in

Uniform Parentage Act requiring blood test for putative fathers was compelling state interest as against religious beliefs); *State ex rel. Holcomb v. Armstrong*, 39 Wn.2d 860, 239 P.2d 545 (1952) (University of Washington rule requiring x-ray of all incoming students for tuberculosis upheld as compelling interest as against beliefs of Christian Scientist student); *State ex rel. Bolling v. Superior Court*, 16 Wn.2d 373, 133 P.2d 803 (1943) (no compelling state interest in statute requiring flag salute and recitation of pledge of allegiance in school as against beliefs of Jehovah's Witnesses).

## B.   THE WALLA WALLA ORDINANCE

Walla Walla's demolition permit ordinance, Walla Walla Municipal Code (WWMC) 20.146.040, provides for a 10-day period for comments concerning the demolition of any structure over 50 years old, or "places of historic value." Thereafter, WWMC 20.146.040B provides:

> If, based on comments received, from the Office of Archaeology and Historic Preservation or local interest groups notified as per Subsection A, staff determines that the subject structure or place possesses sufficient community-wide historic or architectural significance that further public input is warranted, the proposal will be subject to the following:

> 1.   A sixty (60) day staff level stay during which the Director may consult with local and/or state organizations concerned with historic or architectural values. If the structure or place is found to be significant, staff or the concerned group(s) or agency(s) may petition the planning commission for a public hearing to consider significance of the structure or place and options available to preserve the public interest.

> 2.   Based on input received at the public hearing the Planning Commission may:

> a.   Authorize issuance of a Development Permit; or

> b.   Issue a continuance of the stay for no longer than one year to provide opportunity for acquisition, easement, or other preservation mechanism to be negotiated; or

c.   Take other action as required by State statutes or administrative code as advised by authorized representatives of the Archaeology and Historic Preservation Division of the State Department of Community Development.

Thus, under the Walla Walla Municipal Code, the City has the potential to delay development for up to 14 months. The ordinance is unclear as to which parties will be involved in the negotiation of the "acquisition, easement, or other preservation mechanism," but the City of Walla Walla is not excluded by the terms of the ordinance from an active role in such negotiations with the religious institution applicant.

## C.   COERCIVE EFFECT ON THE FREE EXERCISE OF RELIGION

The Bishop asserts and the trial court found the ordinance was an administrative burden on the Bishop's free exercise of religion because of the imposed waiting period. The initial question is whether the ordinance had a coercive effect against the Bishop in the practice of his religion. *First Covenant* I, 114 Wn.2d at 401 (quoting *School Dist. v. Schempp*, 374 U.S. 203, 233, 83 S. Ct. 844, 10 L. Ed. 2d 844 (1963)). The trial court in its Letter Memorandum stated the "ordinance has a coercive effect on the free exercise by placing a limitation on the style of building used, at least for fourteen months." Clerk's Papers at 105. The trial court referenced the "administrative burden" the *First Covenant* II court had found in the requirement for the church to "seek approval of a government body before it alters the exterior of its house of worship, whether or not the alteration is for a religious reason." *First Covenant* II, 120 Wn.2d at 219. The court did not decide if there was any financial burden here, noting the parties had advanced differing contentions that it need not determine.

The appellants respond with two main arguments. First, they assert "[u]nless the structure is a house of worship no burden on the free exercise of religion may be logically

inferred." Br. of Appellants at 10. They do not assert the new building will not be used for religious purposes, only that it will not be a house of worship. The trial court rejected appellants' contention, noting the proposed pastoral center is to be used for church purposes, and that is enough to invoke free exercise protection. Second, the appellants argue the potential 14-month waiting period under the Walla Walla ordinance simply does not amount to a burden of constitutional significance.

1. "House of Worship"

The appellants claim the holding of *First Covenant* II applies only to houses of worship. They cite *First United Methodist Church v. Hearing Examiner*, 76 Wn. App. 572, 887 P.2d 473 (1995), for support. But that case does not support the appellants. There, Division One said only *First Covenant* I and II stand for the proposition that so long as "property is not used primarily for religious purposes, restricting the use of that property does not hinder the free exercise of religion." *First United Methodist*, 76 Wn. App. at 576.

*First Covenant* II did note the structure at issue in that case was the church itself, and not an adjunct building. *First Covenant* II, 120 Wn.2d at 216. The Court did so, however, to distinguish the facts before it from *Rector, Wardens, & Members of Vestry of St. Bartholomew's Church v. New York*, 914 F.2d 348, 354 (2d Cir. 1990), *cert. denied*, 499 U.S. 905, 111 S. Ct. 1103, 113 L. Ed. 2d 214 (1991), where the Court in a free exercise case upheld a landmark ordinance that prevented a church from demolishing a community house on church property in order to build a 47-story tower for commercial purposes. The core distinction between that case and *First Covenant* II was not that the community house was not a house of worship. Rather, the Free Exercise Clause did not trump the landmark ordinance in *St. Bartholomew's* because the proposed new building was intended solely for a commercial purpose, and was to be used "to generate additional revenue to expand [the church's] programs." *First*

*Covenant* II, 120 Wn.2d at 216. Here, there is no dispute that while the pastoral center the Bishop wishes to build will not be strictly a "house of worship," its use will be primarily for religious, not commercial, purposes. Constitutional protections for the free exercise of religion are not limited to houses of worship, but extend to church facilities intimately associated with the church's religious mission.

## 2. The Burden of the Waiting Period

The city ordinance provides for up to a 14-month waiting period before the demolition permit may be issued. The SEPA regulation does not provide for a specified waiting period, but requires the lead agency to determine whether an Environmental Impact Statement is necessary to assess the significance of the environmental impacts of a project, one of which may be the "loss or destruction of historic, scientific, and cultural resources." WAC 197-11-330(3)(e)(i).[4]

In its memorandum opinion, the trial court said:

So the issue is, is the "administrative burden" as applied to a building used for church purposes but not the primary house of worship a violation of the Constitution, federal and/or state? The burden is the delay of up to fourteen months. . . .

The ordinance has a coercive effect on the free exercise by placing a limitation on the style of building used, at least for fourteen months.

Clerk's Papers at 104-05. The trial court concluded:

---

[4]WAC 197-11-330 provides in pertinent part:

An EIS is required for proposals for legislation and other major actions significantly affecting the quality of the environment. The lead agency decides whether an EIS is required in the threshold determination process, as described below.

. . . .

(3) In determining an impact's significance (WAC 197-11-794), the responsible official shall take into account the following, that:

. . . .

(e) A proposal may to a significant degree:

(i) Adversely affect environmentally sensitive or special areas, such as loss or destruction of historic, scientific, and cultural resources, parks, prime farmlands, wetlands, wild and scenic rivers, or wilderness[.]

> The administrative restrictions in this case, i.e., a delay of up to 14 months under the Walla Walla Ordinance at issue, Chapter 20.146, and the consideration of the environmental impact from loss or destruction of historic and cultural areas under WAC 197-11-330(3)(e)(i), are a burden on free exercise of religion as applied to the facts in this case and, therefore, the ordinance and WAC as applied to these facts violate both the federal and state constitutions.

Clerk's Papers at 109.

The appellants conclusorily assert the ordinance and the SEPA regulation "are neither coercive nor compulsive." Br. of Appellants at 8. Amicus notes the city ordinance and SEPA regulation do not prevent demolition of the building, but "merely require the city to comply with specific review procedures prior to taking actions such as issuing demolition permits." Br. of Amicus Curiae at 3. In other words, both appellants and amicus argue the 14-month delay works no burden on the Bishop's free exercise of religion. The dissent argues: "I do not believe a reasonable, definite waiting period such as this has a 'coercive effect' on the practice of religion." Dissent at 211. The dissent does agree, however, that "an indefinite or excessively long waiting period" would constitute a forbidden coercive effect. Dissent at 212.

*First Covenant* I controls and is to the contrary. In that case, a Seattle municipal ordinance required the church to obtain a certificate of approval for any alteration to the exterior of the church structure requiring a building permit. The Court said: "The practical effect of the provisions is to require a religious organization to seek secular approval of matters potentially affecting the Church's practice of its religion." 114 Wn.2d at 406. In *First Covenant* II, the Court said the ordinances burdened the church "administratively" regardless of whether the church intended the alterations for religious reasons. *First Covenant* II, 120 Wn.2d at 219. In *First United Methodist*, the Court reiterated the *First Covenant* I holding, citing the following language from that case:

Regardless of the religious nature of the proposed alteration, the Church must submit plans to the [landmarks preservation] board, a secular body, and negotiate possible alternatives. That requirement creates unjustified governmental interference in religious matters of the Church and thereby creates an infringement on the Church's constitutional right of free exercise.

*First United Methodist*, 129 Wn.2d at 247, quoting *First Covenant* I, 114 Wn.2d at 408 (alterations in original).

While it is clear that only 70 days of delay have technically been ordered in this case, the *potential* of an additional 12 months of delay under the Walla Walla ordinance is an administrative burden. This is not a de minimis delay. In our cases, the *potential* burden of an ordinance creates constitutional infirmity. The mere *nomination* of a building for historic status was sufficient in *First United Methodist* to constitute an administrative burden. In his dissent in *First United Methodist* (in which the author of this opinion joined), Justice Dolliver recounted the *theoretical* nature of the administrative burden of Seattle's Landmark Preservation ordinance:

The City of Seattle (City) has not enacted a landmark-designating ordinance for First United Methodist. *See* SMC 25.12.610. The hearing examiner has not recommended nomination of First United Methodist for landmark designation. *See* SMC 25.12.560; SMC 25.12.610. Rather, First United Methodist's status remains unresolved at the hearing examiner stage of the nomination process. Truly, while the parties are discussing whether to nominate First United Methodist as a landmark, the church should submit any modification proposals to the Seattle City Council (Council). SMC 25.12.620. First United Methodist has submitted no proposals. No governmental body has exerted any controls over the church or its operation. Designation may not occur at all.

Where in this scenario of facts has the allegedly unconstitutional application of the Landmarks Preservation Ordinance occurred? A declaratory judgment on the constitutionality of a yet to be enacted landmark-designating ordinance is

premature, as is consideration of the potential impact of landmark nomination before the nominee has formulated any proposal subject to controls.

*First United Methodist*, 129 Wn.2d at 253. Nevertheless, this Court held the controversy in *First United Methodist* was ripe for adjudication and indeed the Seattle ordinance presented an administrative burden to the church in that case. Our determination of what constituted an administrative burden in *First United Methodist* is dispositive here.

We may assume that delay in construction usually entails additional expense. The ordinance provides for a public hearing. Must the Bishop attend such a hearing? To what purpose if the Bishop declines to alter the Church's future plans? But more significantly here, the additional delay is specifically for the purpose of permitting opponents of the proposed demolition to attempt to broker various alternatives to the church's planned religious purpose for the structure. The ordinance indicates the delay is designed to provide an "opportunity for acquisition, easement, or other preservation mechanism to be negotiated after the public hearing." WWMC 20.146.040B. If the Bishop is unwilling to entertain alternatives, or if none meets his requirements, and he is unwilling to delay his plans, he must then seek approval of the secular authorities to lift the stay and allow him to proceed with his plans to carry out his religious mission. The challenged ordinance creates precisely the kind of administrative burdens *First United Methodist* forbids.

The case at bar is not distinguishable from this Court's precedents. The city ordinance in this case burdens the Bishop administratively by causing potential delay in the Bishop's plans to demolish the school building and construct a pastoral center. The Bishop's plans are in furtherance of his fundamental right to the free exercise of his religion. The ordinance therefore has a coercive effect on the practice of religion. That being the case, the

appellants have the burden of showing a compelling governmental interest in creating delay.[5]

## D. COMPELLING GOVERNMENTAL INTEREST

██ ██ Having concluded the ordinance burdens the free exercise of religion, we now ask whether there was a compelling governmental interest for imposing the burden. We held in *First Covenant* I there is no compelling governmental interest in landmark preservation. *First Covenant* I, 114 Wn.2d at 409-10. Similarly, in *First Covenant* II, this Court said:

> We hold that the City's interest in preservation of aesthetic and historic structures is not compelling and it does not justify the infringement of First Covenant's right to freely exercise religion. The possible loss of significant architectural elements is a price we must accept to guarantee the paramount right of religious freedom.

*First Covenant* II, 120 Wn.2d at 223. Likewise, in *First United Methodist*, we found no compelling governmental interest in landmark preservation and the City actually conceded this point. *First United Methodist*, 129 Wn.2d at 250. In view of these precedents, counsel for appellants conceded at oral argument the Walla Walla ordinance does not advance a compelling state interest. We agree.

## CONCLUSION

The Walla Walla demolition permit ordinance creates an administrative burden on the Bishop's free exercise of

---

[5]The trial court invalidated WAC 197-11-330, the SEPA threshold determination rule as applied here. We decide this case only with respect to the Walla Walla ordinance. We decline to go so far as the trial court in concluding the SEPA regulation created an administrative burden. "SEPA is essentially a procedural statute to ensure that environmental impacts and alternatives are properly considered by the decision makers." *Save Our Rural Env't v. Snohomish County*, 99 Wn.2d 363, 371, 662 P.2d 816 (1983). We decline, on these facts, to foreclose consideration of historic or cultural features of a project subject to SEPA as part of the larger environmental review required by WAC 197-11-330. Here, all of the parties concede the Bishop's permit implicated none of the traditional physical environmental factors such as air, water, traffic, or the like.

religion. The burden of 14 months' potential delay in the advancement of the project and the potential involvement of the religious applicant and secular authorities in the ordinance's envisioned negotiating process is not permissible. The appellants have not demonstrated any compelling governmental interest in requiring the Bishop to shoulder those burdens. Therefore, we find Walla Walla's demolition permit ordinance as applied to the Bishop of Spokane violates article I, section 11 of Washington's Constitution. We affirm the trial court's order dismissing the appellant's petition for a writ of mandamus.

DURHAM, C.J., and SMITH, GUY, ALEXANDER, and SANDERS, JJ., concur.

DOLLIVER, J. (dissenting) — I disagree with the majority that the waiting period amounts to a burden on the Bishop's free exercise of religion. This case is very different from our prior line of cases in two important respects. First, the Bishop has failed to explain what type of "coercive effect" the waiting period will have on the free exercise of religion. Second, the ordinance here is far less restrictive than the Seattle ordinance at issue in our prior cases.

In order for a free exercise claim to prevail, "the complaining party must first prove the government action has a coercive effect on the practice of religion." *First United Methodist Church v. Hearing Examiner*, 129 Wn.2d 238, 246, 916 P.2d 374 (1996). We expressly declined in *First United Methodist* to hold landmark designation of religious buildings unconstitutional, absent proof of a burden on the free exercise of religion. *First United Methodist*, 129 Wn.2d at 252.

We found in *First United Methodist* that the church had successfully demonstrated a burden on its free exercise by showing the ordinance prevented it from selling its property and using the proceeds to advance its religious mission. *First United Methodist*, 129 Wn.2d at

252. And in *First Covenant Church v. City of Seattle*, 120 Wn.2d 203, 840 P.2d 174 (1992) (*First Covenant* II) we found that the ordinance burdened free exercise " 'administratively' " because it required the church to seek approval of a government body before altering its house of worship. *First Covenant* II, 120 Wn.2d at 219. In both of these cases, the ordinances, as applied, were unconstitutional because the churches had successfully demonstrated a burden on their free exercise of religion.

No such burden has been demonstrated here. In a brief to this court, the Bishop states that the Walla Walla ordinance imposes a burden "by intruding on the Church's use of its property to further its religious mission." Reply Br. of Resp't to Amicus Curiae at 5. Yet nowhere in the record does the Bishop explain how the ordinance intrudes on the church's use of its property. The ordinance gives the city no authority to block the demolition of the school. It merely allows the city to impose a waiting period of 10 days to 14 months "to provide opportunity" for the structure's preservation to be negotiated. Walla Walla Municipal Code 20.146.040(B)(2)(b). Contrary to what the majority asserts, the ordinance does not require the religious organization to negotiate with secular authorities to lift the stay. The stay must automatically be lifted after 14 months. I do not believe a reasonable, definite waiting period such as this has a "coercive effect" on the practice of religion. Absent a showing by the respondent to the contrary, I am not persuaded that the ordinance unconstitutionally infringes upon the respondent's free exercise of religion. This court should not blindly always allow the First Amendment to trump appropriate historic preservation.

The majority reasons that the waiting period constitutes "the kind of administrative burden[ ] *First United Methodist* forbids." Majority at 208. However, the ordinance here is much less burdensome than the landmark designating ordinances at issue in either *First Covenant* II or *First United Methodist*. In those cases, the churches were

prohibited from making changes to their properties without the approval of the City of Seattle. In contrast, the Walla Walla ordinance does not prevent the church from ultimately doing what it wants with the school building. The church is not required to seek approval of a government body before demolishing the building. After the waiting period expires, the city must issue the permit.

If the ordinance required city approval before demolition occurred, or if it allowed for an indefinite or excessively long waiting period, *First Covenant* II and *First United Methodist* would be controlling. However, this case involves a different question. I would reverse the trial court.

JOHNSON and MADSEN, JJ., concur with DOLLIVER, J.