IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| ZION HEALTHSHARE, INC., | ) | No. 40454-4-III |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | PUBLISHED OPINION |
| | ) | |
| WASHINGTON STATE; THE | ) | |
| WASHINGTON STATE OFFICE OF | ) | |
| THE INSURANCE COMMISSIONER, | ) | |
| MIKE CREIDLER, COMMISSIONER, | ) | |
| | ) | |
| Respondents. | ) | |

LAWRENCE-BERREY, C.J. — Zion HealthShare, Inc. (Zion) appeals a final administrative order upholding a cease and desist order issued by this state's Office of the Insurance Commissioner (OIC). OIC's order concluded that Zion was acting as an insurer, ordered Zion to cease its insurance business until it registered as an insurer, and imposed a fine, a two percent premium tax, and penalties and interest on that tax.

Zion argues it is not an insurer. It alternatively argues that the seasoning component in RCW 48.43.009—the component preventing it from being exempt from registration—is unconstitutional. In affirming, we conclude that Zion is an insurer and reject its constitutional challenges.

FACTS

*Background*

Zion HealthShare, Inc. is a nonprofit corporation based in Utah whose purpose "is to offer and administer a voluntary and benevolent healthcare cost sharing corporation." Administrative Record (AR) at 260. Zion was formed on November 7, 2018, has 26 U.S.C. § 501(c)(3) tax-exempt status, and does not hold a certificate of authority to transact insurance in Washington. In its articles of incorporation, Zion states its general purpose is "[a]dministering a voluntary community benevolence program designed to assist in the sharing of legitimate medical expenses by and for the exclusive benefit of program members." AR at 260. Zion has about 48,000 members throughout the United States.

*Zion's Membership Guidelines*

Zion's members sign up for membership through Zion's website. Zion's membership guidelines, a 41-page document, is published on its website for prospective members to review. In its guidelines, Zion describes its business model and how it differs from traditional insurance:

> A HealthShare is a non-profit membership program that allows members to share in medical expenses. Zion HealthShare is **not** an insurance program, but members share major medical costs with one another as a community.

AR at 388.

2

To earn and maintain membership with Zion, individuals must adhere to Zion's

principles of membership and submit monthly contributions.  These principles include:

> • I believe that a community of ethical, health-conscious people can
> most effectively care for one another by directly sharing the costs
> associated with each other's healthcare needs. . . .
> • I understand that Zion HealthShare is a benevolent organization,
> not an insurance entity, and that Zion HealthShare cannot guarantee
> payment of medical expenses.
> . . . .
> • I agree to submit to mediation followed by subsequent binding
> arbitration, if needed, for any instance of a dispute with Zion HealthShare
> or its affiliates.

AR at 353.

In addition to abiding by these principles, individuals must make the monthly

contributions associated with their membership tier to gain and maintain eligibility to

share costs with other members.  Zion retains a percentage of monthly member

contributions to cover its administrative costs.  Zion allocates the remaining contributions

toward a fund, which it holds and administers, to pay member-submitted medical

expenses that qualify for sharing under its member guidelines.

When enrolling with Zion, members choose an "Initial Unshareable Amount"

(IUA) of $1,000, $2,500, or $5,000.  AR at 360.  The lower a member's chosen IUA, the

higher the member's monthly contribution.  The member is responsible for paying their

chosen IUA before medical expenses are eligible for sharing with other Zion members.

Members need not pay the IUA again for that medical need until they are symptom free for 12 months.  Additionally, once a member pays three IUAs in a 12-month period, any shareable expense over $500 is paid by the fund.

Premembership medical conditions are not eligible for sharing during the first year of payment and are thereafter limited through the first four years.  Subject to the foregoing, there are 40 types of medical conditions or services that are eligible for sharing, subject to various restrictions.  There are 16 types of medical conditions or services that are not eligible for sharing, including abortion.

Zion has a procedure for resolving disputes if a member disagrees with its determination that an expense is not shareable:

> If a member believes that a limitation was incorrectly placed on member sharing, an appeal may be submitted.  Members may submit an appeal and provide supporting medical evidence to have the membership limitation removed.  All appeals are reviewed by a committee that includes at least one Zion HealthShare board member, as well as trained medical professionals.

AR at 359.  Appeal requests must be submitted within 30 days of Zion denying the need request.

Zion repeatedly asserts in its guidelines that it is not an insurance company.  Zion includes a lengthy two-paragraph disclaimer on the last page of its membership guidelines.  The portion of the disclaimers relevant to this appeal state:

4

> While Zion HealthShare has shared all eligible expenses of its members to date, membership does not guarantee or promise that your eligible need requests will be shared. . . .  The financial assistance members receive will come from other members' monthly contributions and not from Zion HealthShare.
>
> . . . These guidelines do not create a legally enforceable contract between Zion HealthShare and any of its members. . . .

AR at 391.

*Procedural History*

Zion enrolled 1,694 Washington residents into its cost-sharing program between 2019 and 2021.  OIC learned of Zion's operation through a consumer's inquiry.  OIC investigated Zion and concluded it was acting as an unauthorized insurer in Washington.  OIC issued an order requiring Zion to cease and desist conducting business in Washington as an insurer until it registered with the insurance commissioner and ordered Zion to pay a $50,000 fine, a two percent premium tax on contributions Zion had collected from its members in Washington, and penalties and interest on that tax.

Zion requested an administrative hearing to contest OIC's order.  The parties filed cross motions for summary judgment.  The initial order granted OIC's motion and denied Zion's motion.  Zion appealed administratively.  The reviewing officer issued a final order affirming the initial order.  Zion appealed the final order to Thurston County

No. 40454-4-III
*Zion HealthShare, Inc. v. Office of Ins. Comm'r*

Superior Court. By stipulated motion, that court certified review to this court in accordance with RCW 34.05.518.

## ANALYSIS

STANDARD OF REVIEW

"[W]here the original administrative decision was on summary judgment, the reviewing court must overlay the [Administrative Procedure Act, chapter 34.05 RCW] standard of review with the summary judgment standard." *Verizon Nw., Inc. v. Emp. Sec. Dep't*, 164 Wn.2d 909, 916, 194 P.3d 255 (2008). This court views all facts in the light most favorable to the nonmoving party. *Ehrhart v. King County*, 195 Wn.2d 388, 409, 460 P.3d 612 (2020). Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). "We review questions of law and an agency's application of the law to the facts de novo, but we give the agency's interpretation of the law great weight where the statute is within the agency's special expertise." *Cornelius v. Dep't of Ecology*, 182 Wn.2d 574, 585, 344 P.3d 199 (2015).

A.    WHETHER ZION IS AN INSURER

Subject to exceptions, an "insurer" is "every person engaged in the business of making contracts of insurance." RCW 48.01.050. Zion does not claim that it comes within any exception. Instead, it argues that it does not make contracts with its members.

6

A "contract" is a "promise or set of promises for the breach of which the law provides a remedy." 25 DAVID K. DEWOLF, KELLER W. ALLEN & DARLENE BARRIER CARUSO, WASHINGTON PRACTICE: CONTRACT LAW AND PRACTICE, § 1:1, at 2 (3d ed. 2014). Zion argues there is no legally enforceable promise between itself and its members. In support of its argument, it references its own disclaimer: "These guidelines do not create a legally enforceable contract between [Zion] and any of its members." AR at 391.

A party opposing summary judgment "must set forth specific facts showing that there is a genuine issue for trial." CR 56(e). A "fact" is "'an event, an occurrence, or something that exists in reality.'" *Michak v. Transnation Title Ins. Co.*, 148 Wn.2d 788, 795, 64 P.3d 22 (2003) (quoting *Grimwood v. Univ. of Puget Sound, Inc.*, 110 Wn.2d 355, 359, 753 P.2d 517 (1988)). The disclaimer phrase—"these guidelines do not create a legally enforceable contract"—is not a fact. The disclaimer phrase is a legal conclusion and like other legal conclusions, we give it no deference. *Cf. McCarty v. King County Med. Serv. Corp.*, 26 Wn.2d 660, 684, 175 P.2d 653 (1946) ("'No one can change the nature of insurance business by declaring in the contract that it is not insurance.'" (quoting *Allin v. Motorists' Alliance*, 234 Ky. 714, 29 S.W.2d 19, 23 (1930))).

When construing a writing, we apply the objective manifestation theory and consider what a reasonable person would understand the writing to mean. *Plumbing*

*Shop, Inc. v. Pitts*, 67 Wn.2d 514, 517, 408 P.2d 383 (1965). Here, there are two provisions in the membership guidelines that are particularly important in our analysis of whether Zion objectively manifests a promise to pay its members' eligible medical expenses.

First, the guidelines contain a dispute resolution process so that members can challenge whether Zion wrongly denied payment of an eligible medical expense. This process implies a commitment by Zion to pay in accordance with its guidelines. Second, in its disclaimer, Zion assures prospective members that it "has shared all eligible medical expenses of its members to date," and explains that payment comes from other members' monthly contributions, not from Zion itself. AR at 391. A reasonable person would understand that payment of an eligible medical expense is contingent on the sufficiency of the members' pooled funds. We conclude that Zion made a legally enforceable promise to pay its members' eligible medical expenses, even though its promise is subject to the sufficiency of its members' pooled funds.

Zion asks this court to construe its membership guidelines in a manner that would render its payment of eligible medical expenses entirely discretionary. OIC responds that courts eschew a construction that would render "promises" illusory. We agree with OIC.

"If a party retains 'an absolute right not to perform at all, there is an absence of consideration.'" *Armed Citizens' Legal Def. Network v. Office of Ins. Comm'r*,

28 Wn. App. 2d 64, 75, 534 P.3d 439 (2023) (quoting *Felice v. Clausen*, 22 Wn. App. 608, 611, 590 P.2d 1283 (1979)). "Where 'the provisions of an agreement leave the promisor's performance entirely within [their] discretion and control, the "promise" is illusory.'" *Id.* (quoting *Felice*, 22 Wn. App. at 611). Courts seek to avoid an interpretation that would render a "promise" illusory. *Taylor v. Shigaki*, 84 Wn. App. 723, 730, 930 P.2d 340 (1997).

We conclude that Zion promises its members it will pay their eligible medical expenses from the fund it holds and administers. We reject Zion's argument that it does not make contracts with its members.

B.    WHETHER THE SEASONING COMPONENT IN RCW 48.43.009 IS UNCONSTITUTIONAL

A health care sharing ministry is not an insurer. RCW 48.43.009. Zion seeks to come within the definition of a "health care sharing ministry." RCW 48.43.009; 26 U.S.C. § 5000A(d)(2)(B)(ii). To do so, it argues that the one definitional component it cannot satisfy is unconstitutional. This component requires the ministry to have "been in existence at all times since December 31, 1999." 26 U.S.C. § 5000A(d)(2)(B)(ii)(IV). We refer to this component as "the seasoning component."

Zion argues that the seasoning component violates (1) the privileges and immunities clause of the Washington State Constitution, (2) the First Amendment's

9

establishment clause in the United States Constitution, and (3) the free exercise clause of the Washington State Constitution.

We presume that statutes are constitutional. *Wash. Educ. Ass'n v. Dep't of Retirement Sys.*, 181 Wn.2d 233, 241, 332 P.3d 439 (2014). A party challenging a statute's constitutionality must establish there is no reasonable doubt that it violates the Washington Constitution. *Id.* We next address Zion's constitutional challenges.

### 1. Privileges and immunities clause of the Washington State Constitution

Our state's privileges and immunities clause provides:

No law shall be passed granting to any citizen, class of citizens, or corporation other than municipal, privileges or immunities which upon the same terms shall not equally belong to all citizens, or corporations.

WASH. CONST. art. I, § 12. This clause was enacted to "'prevent people from seeking certain privileges or benefits to the disadvantage of others.'" *Grant County Fire Prot. Dist. No. 5 v. City of Moses Lake*, 150 Wn.2d 791, 809, 83 P.3d 419 (2004) (quoting *State v. Smith*, 117 Wn.2d 263, 283, 814 P.2d 652 (1991) (Utter, J., concurring)).

An alleged violation of the privileges and immunities clause calls for a two-part test. *Bennett v. United States*, 2 Wn.3d 430, 443, 539 P.3d 361 (2023). First, we must determine whether the law grants what the state constitution considers a privilege or immunity. *Id.* Generally, these only include fundamental rights of state citizenship and

not those left to the discretion of the legislature. *Martinez-Cuevas v. DeRuyter Bros. Dairy*, 196 Wn.2d 506, 519, 475 P.3d 164 (2020). If the answer is yes, we then determine whether reasonable grounds exist for the law. *Bennett*, 2 Wn.3d at 443.

Washington courts recognize the right to carry on business as fundamental, but this right is implicated only in very narrow circumstances. *Wash. Food Indus. Ass'n v. City of Seattle*, 1 Wn.3d 1, 28, 524 P.3d 181 (2023). Zion asserts the right to carry on business as a health care sharing ministry. The seasoning component does not deny Zion the right to carry on business as a health care sharing ministry, it only requires Zion to comply with generally applicable insurance laws. There is no fundamental right for a business to be exempt from generally applicable laws.

### 2. Establishment clause of the United States Constitution

The establishment clause of the United States Constitution states, "Congress shall make no law respecting an establishment of religion." U.S. CONST. amend. I. The clause prohibits the federal government or any state from passing a law that aids one or all religions or prefers one religion over another. *Everson v. Bd. of Educ. of Ewing Twp.*, 330 U.S. 1, 15, 67 S. Ct. 504, 91 L. Ed. 711 (1947).

The Supreme Court requires courts to interpret the establishment clause by "'reference to historical practices and understandings.'" *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 535, 142 S. Ct. 2407, 213 L. Ed. 2d 755 (2022) (quoting *Town of*

11

*Greece v. Galloway*, 572 U.S. 565, 576, 134 S. Ct. 1811, 188 L. Ed. 2d 835 (2014)). The line between permissible and impermissible must "'accor[d] with history and faithfully reflec[t] the understanding of the Founding Fathers.'" *Kennedy*, 597 U.S. at 536 (internal quotation marks omitted) (quoting *Town of Greece*, 572 U.S. at 577). If we cannot identify an identical practice or understanding at the time of the founding, we look to available historical analogues for guidance. *Hunter v. U.S. Dep't of Educ.*, 115 F.4th 955, 965 (9th Cir. 2024).

Prior to *Kennedy*, courts applied a multi-pronged approach established in *Lemon v. Kurtzman*, 403 U.S. 602, 91 S. Ct. 2105, 29 L. Ed. 2d 745 (1971). *See Kennedy*, 597 U.S. at 507. Following the formal abandonment of the *Lemon* test and adoption of the historical standard in *Kennedy*, the Supreme Court has continued to examine whether a statute makes denominational preferences in deciding whether to apply strict scrutiny. *See Catholic Charities Bureau, Inc. v. Wisconsin Lab. & Indus. Review Comm'n*, 605 U.S. 238, 248-52, 145 S. Ct. 1583, 221 L. Ed. 2d 881 (2025).

"[W]hen we are presented with a state law granting a denominational preference, our precedents demand that we treat the law as suspect and that we apply strict scrutiny in adjudging its constitutionality." *Larson v. Valente*, 456 U.S. 228, 246, 102 S. Ct. 1673, 72 L. Ed. 2d 33 (1982). In *Larson*, the court considered an amendment to Minnesota law. Prior to the amendment, all religious organizations were exempt from the registration and

disclosure requirements for solicited contributions. *Id.* at 231. In 1978, Minnesota

amended the law to include a "50 per cent rule." *Id.* The 50 per cent rule narrowed the

exemption to "'[*a*] *religious society or organization* which receive[s] more than half of

[its] contributions . . . from . . . members . . . or . . . from a parent organization or

affiliated organization.'" *Id.* at 231-32 n.3 (emphasis added). Shortly after its

enactment, Minnesota authorities notified the Unification Church that it was no longer

exempt from the general registration and disclosure requirements for solicitation of funds.

*Id.* at 232. The Unification Church brought an action in federal court to have the

amendment declared unconstitutional. *Id.* In support of its summary judgment request, a

Unitarian Church member submitted a declaration stating, "[A]mong the activities

emphasized by the Church were 'door-to-door public-place proselytizing and solicitation

of funds to support the Church' . . . and that the application of the . . . fifty percent rule

would deny its members their 'religious freedom.'" *Id.* at 234. The court then discussed

*Murdock v. Pennsylvania*, 319 U.S. 105, 63 S. Ct. 870, 87 L. Ed. 1292 (1943), which

concerned Jehovah's Witnesses, a religious organization that similarly solicited

contributions from the public. The *Larson* court concluded that the Minnesota

amendment made "explicit and deliberate distinctions between different religious

organizations." *Id.* at 246 n.23. The court further concluded that these distinctions

granted denominational preferences and invalidation was required unless it satisfied the strict scrutiny test. *Id*. at 246.

Relying on *Larson*, Zion argues that the seasoning component makes explicit and deliberate distinctions between health care sharing ministries based solely on when they were founded. Pet'r's Reply Br. at 24. We disagree with Zion's argument. Zion conflates "distinctions between different religious organizations" (that require strict scrutiny) and "distinctions between health care sharing ministries" (that do not).

Any religious denomination can qualify as a health care sharing ministry. The seasoning component applies with equal force to all denominations. That is, all denominational health care sharing ministries formed after December 31, 1999, must register as an insurer under Washington law. Because the seasoning component does not discriminate between religious denominations, we reject Zion's argument that strict scrutiny applies. Zion does not challenge the seasoning component under any other standard than strict scrutiny. We conclude that Zion fails to satisfy its heavy burden of proving that the seasoning component violates the establishment clause.[1]

---

[1] In its statement of facts, Zion admits it does not know why the United States Congress added the seasoning component. Pet'r's Opening Br. at 12. It then drops a footnote citing a 2019 law review article. In its briefing, Zion does not raise a disparate impact argument. Zion's footnote citation, without argument, is insufficient to raise disparate impact. *But cf., King County Pub. Hosp. Dist. No. 2 v. Dep't of Health*, 178 Wn.2d 363, 379, 309 P.3d 416 (2013) (A thorough argument in a two-page footnote is

> ### *3. Free exercise clause of the Washington Constitution*

Article I, section 11 of the Washington Constitution provides:

Absolute freedom of conscience in all matters of religious sentiment, belief and worship, shall be guaranteed to every individual, and no one shall be molested or disturbed in person or property on account of religion; but the liberty of conscience hereby secured shall not be so construed as to excuse acts of licentiousness or justify practices inconsistent with the peace and safety of the state.

The free exercise of religion is a fundamental right. *First United Methodist Church v. Hearing Exam'r*, 129 Wn.2d 238, 246, 916 P.2d 374 (1996).

OIC argues that the seasoning component does not violate Zion's free exercise of religion because the definition of a "health care sharing ministry" is neutral and generally applicable. However, this is the standard applied to alleged violations of the free exercise clause of the First Amendment to the United States Constitution. *See Dep't of Human Res. v. Smith*, 494 U.S. 872, 110 S. Ct. 1595, 108 L. Ed. 2d 876 (1990). Article I, section 11 of the Washington Constitution provides broader protection than its federal counterpart. *City of Woodinville v. Northshore United Church of Christ*, 166 Wn.2d 633, 642, 211 P.3d 406 (2009).

A party challenging the government action first must prove "that their religious convictions are sincere and central to their beliefs." *Munns v. Martin*, 131 Wn.2d 192,

---

sufficient to warrant review.).

199, 930 P.2d 318 (1997) (quoting *Backlund v. Bd. of Comm'rs*, 106 Wn.2d 632, 639, 724 P.2d 981 (1986)).  The challenger next must show that the law or government action burdens its free exercise of religion.  *Munns*, 131 Wn.2d at 200; *see also State v. Arlene's Flowers, Inc.*, 193 Wn.2d 469, 527, 441 P.3d 1203 (2019).

A burden exists when the law or action has a coercive effect on the practice of religion.  *First United Methodist Church*, 129 Wn.2d at 246.  "'A facially neutral, even-handedly enforced statute that does not directly burden free exercise may, nonetheless, violate article 1, section 11, if it indirectly burdens the exercise of religion.'"  *Open Door Baptist Church v. Clark County*, 140 Wn.2d 143, 153, 995 P.2d 33 (2000) (quoting *Munns*, 131 Wn.2d at 200).

If the challenger meets these requirements, "the burden of proof shifts to the government to show the restrictions serve a compelling state interest and are the least restrictive means for achieving the government objective." *First United Methodist Church*, 129 Wn.2d at 246.  A compelling interest calls for a "'clear justification . . . in the necessities of national or community life.'"  *State ex rel. Bolling v. Superior Ct.*, 16 Wn.2d 373, 385, 133 P.2d 803 (1943) (quoting *Barnette v. W. Virginia State Bd. of Educ.*, 47 F. Supp. 251, 254 (S.D. W. Va. 1942)).

Citing to the declaration of its chief executive officer and president, Nathan Udy, Zion states that its reason for existence is to encourage its members to share their burdens

16

with one another—a tenet espoused by Paul the Apostle to the churches in Galatia.[2]

Pet'r's Opening Br. at 55.  Zion satisfied the first step of the two-part inquiry.

With respect to the second step, Zion argues:

> The [seasoning component] would not only interfere with, but positively preclude Zion from acting pursuant to, its religious beliefs.  The [seasoning component], if applied, would preclude Zion from assisting and facilitating Washington members' sharing of medical expenses with each other.

Pet'r's Opening Br. at 55.  But for a footnote dropped by Zion, we would be left to guess

how it contends the seasoning component burdens its exercise of religion.  In the

footnote, Zion adds:

> Even if Zion were to comply with the requirement that it register as an insurer, doing so would make it subject to state law mandates—such as the tax on "premiums," and the mandate to facilitate payments for abortion services.  See RCW 48.43.073 (Requiring all health insurance policies issued in Washington State to provide coverage for abortion related services).  Zion could not conscientiously agree to facilitate payment for abortion services because doing so would be inconsistent with its sincerely held religious beliefs.  AR 403 (Udy Dec., ¶ 6).

Pet'r's Opening Br. at 55 n.16.

We disagree that requiring Zion to be a licensed insurance company in

Washington would have a coercive effect on Zion encouraging its members to share their

---

[2] Galatians 6:2.

burdens with one another. First, the two percent premium tax levied on member contributions is negligible, not coercive, and can be passed on to members.

Second, being subject to Washington State insurance law would encourage greater sharing of medical burdens with one another. Under Washington law, Zion would be required to cover preexisting medical conditions and a wider array of medical services and procedures with less restrictions. Although this will require higher monthly contributions from members, encouraging *increased* sharing of burdens is consistent with Zion's reason for existence.

Third, being subject to Washington State insurance law would require Zion to pay for abortions *only if* it retains coverage for maternity care or services. RCW 48.43.073(1)(a) provides in relevant part: "[I]f a health plan . . . provides coverage for maternity care or services, the health plan must also provide a covered person with substantially equivalent coverage to permit the abortion of a pregnancy." Zion does not argue that excluding maternity care from its covered services would have a coercive effect on its religious beliefs. We conclude that Zion fails to satisfy its heavy burden to show that the seasoning component violates our state's free exercise clause.

18

We affirm the agency's final order.

Lawrence-Berrey, C.J.

WE CONCUR:

Staab, J.

Birk, J.[3]

---

[3] The Honorable Ian S. Birk is a Court of Appeals, Division One, judge sitting in Division Three pursuant to CAR 21(a).